HEROLD LAW, P.A.
25 Independence Boulevard
Warren, New Jersey 07059
Telephone: (908) 647-1022
Facsimile:  (908) 647-7721
*Attorneys for Plaintiffs*

| | |
|---|---|
| TRACEY HEISLER, WILLIAM HEISLER, VIKING DEVELOPMENT COMPANY, LLC, and SKYLANDS PRESERVATION ALLIANCE,<br><br>*Plaintiffs,*<br><br>vs.<br><br>THE TOWNSHIP OF FRANKLIN (WARREN COUNTY) and the LAND USE BOARD OF THE TOWNSHIP OF FRANKLIN,<br><br>*Defendants.* | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: WARREN COUNTY<br>DOCKET NO.: WRN-L-0002-21<br><br>CIVIL ACTION<br><br>**FIRST AMENDED COMPLAINT IN LIEU OF PREROGATIVE WRITS** |

Plaintiffs, Tracey Heisler, William Heisler, Viking Development Company, LLC, and Skylands Preservation Alliance (collectively, "Plaintiffs"), by way of Complaint against Defendants, the Township of Franklin (Warren County) (the "Township") and the Land Use Board of the Township of Franklin (the "Land Use Board"), (collectively, "Defendants"), say:

## NATURE OF ACTION

1.      This action in lieu of prerogative writs concerns the Township of Franklin's designation of real property as a "non-condemnation area in need of redevelopment" under the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 *et seq.* (the "Redevelopment Law")

2.      The real property proposed for development consists of approximately 111.52 acres, located at 380 Bloomsbury Road, Bloomsbury, New Jersey, and designated on the Official Tax Map of the Township of Franklin as Block 58, Lot 1 (the "Farm Property").

3.      The Farm Property is owned by Barry Tobias and Karen Berlant, and is currently used for agricultural purposes.

4.      Upon information and belief, a private developer, Safavieh Development Group LLC ("Safavieh"), seeks to construct a warehouse and trucking facility on the Farm Property exceeding 1,000,000 sq. ft. in size (the "Project").

5.      In this action, Plaintiffs challenge the December 2, 2020 adoption by Defendant, Land Use Board of the Township of Franklin, of a resolution that improperly, incorrectly, arbitrarily, and capriciously determined without substantial evidence that the Farm Property meets the criteria set forth under N.J.S.A. 40A:12A-5(c) and recommended that the Township designate the Farm Property as a "non-condemnation area in need of redevelopment" (the "December 2 Resolution"). A true and correct copy of the December 2 Resolution is attached hereto as **Exhibit "A"**.

6.      Plaintiffs further challenge the December 7, 2020 unanimous adoption of a resolution by the Township Committee of the Defendant, Township of Franklin, which improperly and incorrectly adopted the Land Use Board's recommendations, designating the Farm Property as a "non-condemnation area in need of redevelopment" under N.J.S.A. 40A:12A-5(c), and authorizing the Township's professionals to prepare a redevelopment plan for the Farm Property to be presented to the Township Committee ("Resolution 2020-71"). A true and correct copy of Resolution 2020-71 is attached hereto as **Exhibit "B"**.

7.      Plaintiffs' Complaint is also brought pursuant to the Court's January 3, 2020 Consent Order (the "Consent Order"). A true and correct copy of the Consent Order is attached hereto as **Exhibit "C"**.

## THE PARTIES

8.      Defendant TOWNSHIP OF FRANKLIN, including the Township Committee (the "Township Committee" or "Committee"), the mayor and other municipal officials thereof (collectively, the "Township"), is a municipal corporation of the State of New Jersey, having offices at 2093 Route 57, Broadway, Franklin Township, Warren County, New Jersey.

9.      Defendant LAND USE BOARD OF THE TOWNSHIP OF FRANKLIN (the "Board" or the "Land Use Board") is a municipal agency constituted by the Township of Franklin pursuant to the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. ("MLUL"), with offices at 2093 Route 57, Broadway, Franklin Township, Warren County, New Jersey.

10.     Plaintiffs Tracey Heisler and William Heisler (the "Heisler Plaintiffs") are the owners of a tract of real property located in the Township of Franklin, more commonly known as 370 Bloomsbury Road, Bloomsbury, Franklin Township, Warren County, New Jersey, and designated on the Official Tax Map of the Township of Franklin as Block 58, Lot 1.04 (the "Heisler Property").

11.     Plaintiff Viking Development Company, LLC ("Viking") is the owner of a tract of real property located in the Township of Franklin, designated on the Official Tax Map of the Township of Franklin as Block 61, Lots 10-11 (the "Viking Property").

12.     The Heisler Property and the Viking Property are both located immediately adjacent to and in the immediate vicinity of the Farm Property.

13.     Plaintiff Skylands Preservation Alliance ("Skylands") (collectively with Viking and Heisler Plaintiffs, "Plaintiffs") is a 501(c)(3) nonprofit organization with members residing in Township of Franklin.

14.     This Court has subject matter jurisdiction over Plaintiff's claims in this Complaint pursuant to the Redevelopment Law and R. 4:69.

3

**RELEVANT FACTS**

15.     The Farm Property is located within the Township's Industrial Zoning District, which permits storage and warehousing uses, as well as agricultural uses, with a minimum lot size requirement of 130,000 sq. ft.

16.     Upon information and belief, in or prior to 2018, Safavieh identified the Farm Property for possible development of a warehouse and trucking facility.

17.     Upon information and belief, representatives of Safavieh met with Township officials in 2018 to discuss development of the Farm Property.

18.     James N. Onembo, who is a member of the Township Land Use Board and who is employed as Township Zoning Officer ("Mr. Onembo"), sent a letter to the New Jersey Department of Environmental Protection ("NJDEP") dated November 30, 2018 concerning the development of the Farm Property, which was identified by street address, lot and block (the "November 2018 Onembo Letter").

19.     The November 2018 Onembo Letter confirmed meetings had occurred between Township Officials and Safavieh and expressed to NJDEP that the Township supported development of the Farm Property:

> The current owner is under contract with a purchaser who has expressed an interest to construct a sizable warehouse on the property. Professionals associated [with] the potential purchaser have met with Township officials to convey their intentions and to seek direction with respect to the planning process. At that time they were advised their preliminary concept plan was in conformance with the Township's Master Plan and Zoning Ordinance.
>
> We are hopeful the project will continue to move forward enabling the Franklin Township Land Use Board to consider the various aspects of the proposal and determine its applicability within the above captioned zone.

20.     Safavieh sent to Township Mayor Jeff DeAngelis correspondence dated January 21, 2019, confirming the fact Safavieh had met with the Mayor and his staff "to discuss the

possibility of the development of a 1,200,000 square foot warehouse and distribution facility in" the Township, and outlining "the terms which [Safavieh] seek[s] in order to move forward with the project." (the "January 21 Safavieh Letter"). A true and correct copy of the January 21 Safavieh Letter is attached hereto as **Exhibit "D"**.

21.    The January 21 Safavieh Letter stated,

the cost of paying full real estate taxes would make this site costlier than many available alternatives. As a result, we are seeking the cooperation of the Township in the granting of a long-term tax abatement and the issuance of a redevelopment area bond so that the costs of operation of this location will be competitive with other possible sites.

22.    Included among the January 21 Safavieh Letter's specific requests were the following:

- "The Township shall declare the site as an 'area in need of redevelopment'";

- "The Township shall adopt a 'redevelopment plan'… for the site so as to permit its redevelopment for the warehousing and distribution facility configured as we discussed in our meeting.";

- The Township shall designate a Safavieh entity as the "'Urban Renewal Entity'…for such purpose as the designated redeveloper of the Project" ("Safavieh URE");

- The Township shall authorize execution of a financial agreement with the Safavieh URE under the Long Term Tax Exemption Law, including a 30 year tax abatement and payment in lieu of taxes (PILOT) based on the size of the facility; and

- The Township shall authorize the issuance of a redevelopment area bond.

23.    The January 21 Safavieh Letter included as exhibits data regarding the Township's total tax assessments, a calculation of annual payments under the proposed redevelopment area bond, and a detailed projection/analysis of payments and allocation of municipal revenues for each year of the 30 year PILOT proposal. See **Ex. "D"**.

24.     The January 21 Safavieh Letter's PILOT projection/analysis anticipated a total of $24,340,848 in PILOT payments from 2020 through 2049, in lieu of "Projected Theoretical Taxes" in the amount of $72,889,850. See **Ex. "D"**.

25.     At the February 4, 2019 Township Committee Meeting, the Committee approved Resolution 2019-34, authorizing and directing the Land Use Board to undertake a preliminary investigation to determine whether the Farm Property would qualify as "an area in need of redevelopment".

26.     The Land Use Board thereafter retained land planner James T. Kyle, PP, AICP ("Mr. Kyle") of Kyle + McManus Associates ("K&M") to conduct the preliminary investigation.

27.     Mr. Kyle had been identified as a "CC" on the January Safavieh Letter, sent two weeks prior to the Township's authorization for the Board to conduct the preliminary investigation, implying he had participated, at least to some extent, in discussions of the Project with Safavieh.

28.     By way of correspondence to NJDEP dated April 1, 2019, Mayor DeAngelis advocated on behalf of the Project's application for NJDEP Flood Hazard Area Verification Approval and a Flood Hazard Area Applicability Determination:

> I am the Mayor of Franklin Township, Warren County, and I write you in that capacity. Please accept this letter as representation of Franklin Township's support for the above-referenced approval and determination, and for the project it supports.
> …
> The Township supports this project, finding it consistent with the Municipal Land Use Law
> …
> This project supported by these applications is welcomed by Franklin Township.... Provided that the requested permits are consistent with sound environmental regulations and practice, Franklin Township fully supports the issuance of these permits.

29.     As part of the K & M investigation of the Farm Property, on April 18, 2019 K & M issued a report prepared by Mr. Kyle on behalf of the Land Use Board, entitled "Preliminary

Investigation Block 58, Lot 1" (the "2019 K & M Report"). A true and correct copy of the 2019 K & M Report is attached hereto as **Exhibit "E"**.

30.     The 2019 K & M Report determined the Farm Property was "an area in need of redevelopment" under the following criteria, set forth in N.J.S.A. 40A:12A-5(c):

> Land that is owned by the municipality, the county, a local housing authority, redevelopment agency or redevelopment entity, or unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, and that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital.

31.     In describing the Farm Property, page 6 of the 2019 K & M Report identified, "at present the parcel is actively farmed." See **Ex. "E"**.

32.     Contrary to the finding the Farm Property is "actively farmed", and without any analysis or explanation, the 2019 K & M Report nevertheless concluded on page 10, the Farm Property "has remained vacant for a period of at least 10 years". See **Ex. "E"**.

33.     The 2019 K & M Report further made the following conclusory determination concerning the Farm Property, on page 10:

> Located in the extreme southeast corner of the Township, the parcel's location relative to developed portions of the municipality and isolated location means it is not likely to develop without intervention on the part of the Township and incentives available through the redevelopment process.

34.     The 2019 K & M Report made no adequate findings of fact and conducted no appropriate analysis to support its conclusions.

35.     The Farm Property is not vacant, nor is it "unimproved", but instead is appropriately utilized and devoted to productive agricultural use.

36.     There are no buildings on the Farm Property that fail to meet current building and health standards, or which are obsolete, dilapidated or in disrepair.

## LAND USE BOARD & TOWNSHIP COMMITTEE ACTIONS

37.    The Land Use Board conducted a single hearing on May 1, 2019 to hear testimony from Mr. Kyle, affected property owners and members of the public concerning whether to recommend the Township Committee designate the Farm Property as an area in need of redevelopment under the Redevelopment Law (the "May 1 Board Meeting").

38.    Local opposition to a redevelopment designation of the Farm Property was presented at the May 1 Board Meeting by several local residents, including Plaintiff Tracey Heisler.

39.    Despite the opposition, at the same meeting the Land Use Board voted on and approved a pre-drafted resolution recommending the Township Committee designate the Farm Property an area in need of redevelopment (the "May 1 Resolution"). A true and correct copy of the May 1 Resolution is attached hereto as **Exhibit "F"**.

40.    The May 1 Resolution, which was drafted prior to, and approved at the May 1 Board Meeting, stated the Board:

> [gave] all persons who are interested in or would be affected by a determination that the Study Area is a non-condemnation area in need of redevelopment the opportunity to be heard; … considered the [K & M Report], heard the comments of [Mr. Kyle], opened the meeting for public comment, and deliberated on the matter using the criteria set forth in the Redevelopment Law; and after careful consideration of all evidence presented and all testimony offered
> …
> incorporated [the 2019 K & M Report] by reference in its entirety [and]
> …
> recommend[ed] that the [Farm Property] be declared a non-condemnation area in need of redevelopment in accordance with the Redevelopment Law, for the reasons set forth in the [K & M Report].

41.    Five days later, the Board's recommendation was presented at the May 6, 2019 Township Committee meeting.

42.     On May 6, 2019, the Township Committee adopted a resolution memorializing its designation of the Farm Property as a non-condemnation area in need of redevelopment under the Redevelopment Law ("Resolution 2019-48"). A true and correct copy of Resolution 2019-48 is attached hereto as **Exhibit "G"**.

43.     Public comment on the designation and Resolution 2019-48 was not permitted at the May 6 Township Committee meeting until after the Committee had already voted to approve the designation and Resolution.

44.     Plaintiffs subsequently filed their Complaint in Lieu of Prerogative Writs on June 13, 2019, bearing Docket No.: WRN-L-0167-19 (the "Previous Complaint").

45.     The Consent Order declared as void and set aside both the May 1 Resolution and Resolution 2019-48. See **Ex. "C"**.

46.     The Consent Order further held that Mayor DeAngelis and Onembo were precluded from further participation in any proceeding involving the investigation of the Farm Property. See **Ex. "C"**.

47.     Additionally, the Consent Order remanded the instant matter first to the Land Use Board to conduct a new hearing pursuant to N.J.S.A. 40A:12A-6, then subsequently to the Township Committee to receive anew the Land Use Board's recommendation that the Farm Property be determined, or not be determined, to be a redevelopment area. See **Ex. "C"**.

### THE 2020 K & M REPORT

48.     On January 24, 2020, James T. Kyle of K&M issued a Preliminary Investigation Report (the "2020 K&M Report"). A true and correct copy of the 2020 Preliminary Investigation Report is attached hereto as **Exhibit "H"**.

49.     The 2020 K & M Report again determined the Farm Property was "an area in need of redevelopment" under the following criteria, set forth in N.J.S.A. 40A:12A-5(c):

Land that is owned by the municipality, the county, a local housing authority, redevelopment agency or redevelopment entity, or unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, and that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital.

50.     Again, in describing the Farm Property, page 6 of the 2020 K & M Report identified, "at present the parcel is actively farmed and bordered by hedgerows on all sides." See **Ex. "H"**.

51.     The 2020 K & M Report again arbitrarily concluded on page 12 that the Farm Property "has remained vacant for a period of at least 10 years" despite being "actively farmed since at least 1930 (confirmed by historical aerial photos)." See **Ex. "H"**.

52.     The 2020 K & M Report arbitrarily concluded that the Farm Property is "both vacant and unimproved" and that its "location is challenging despite reasonable access to Route 78 to the south." See **Ex. "H"**.

53.     The 2020 K & M Report further made the following arbitrary, conclusory determination concerning the Farm Property on pages 12-13:

The [Farm Property] is located in the extreme southwest corner of the Township, away from what can be considered the developed portions of Franklin.
…
In assessing the [Farm Property], it can be said that it is located well away from developed portions of the municipality, and it is isolated from most other developments in the Township. The [Farm Property] further satisfies Criteria C in that it lacks means of access to developed portions of the municipality, and is remote, with little significant development around it.
…
It is therefore clear that by virtue of the [Farm Property's] location and its infrastructure limitations in a rural environment, it is not likely to be developed by private capital alone. Redevelopment designation is this necessary and appropriate to encourage development of the property with uses for which it was zoned.

54.     However, the 2020 K & M Report states on page 8 that, "[t]he [Farm Property] is situated within the Industrial District, which permits . . . agricultural uses [.]" See **Ex. "H"**.

55.     The Farm Property is neither vacant nor unimproved, but instead is appropriately utilized and devoted to productive agricultural use.

56.     There are no buildings on the Farm Property that fail to meet current building and health standards, or which are obsolete, dilapidated or in disrepair.

57.     The Farm Property is located on a County Road very close to interstate highway I-78, and has direct access to developed sections or portions of Franklin Township.

58.     The Land Use Board held hearings on February 26, March 11, November 11, and November 23, 2020 concerning whether to recommend the Township Committee designate the Farm Property as an area in need of redevelopment under the Redevelopment Law.

59.     Local opposition to a redevelopment designation of the Farm Property was presented at the 2020 Land Use Board meetings by several local residents, including certain Plaintiffs who presented through counsel professional planning testimony and a written report by Peter Steck, a professional planner.

60.     On October 19, 2020, Safavieh sent a letter to the Township (the "October 19 Safavieh Letter"), and all municipal officials and attorneys, demanding the conclusion of all hearings about the Farm Property and a vote to affirm designating the Farm Property as an area in need of redevelopment by the end of the next meeting. A true and correct copy of the October 19 Safavieh Letter is attached hereto as **Exhibit "I"**.

61.     The October 19 Safavieh Letter was entered as an exhibit during the testimony of Peter Steck, a professional planner.

62.     On December 2, 2020, the Land Use Board approved a resolution (the "December 2 Resolution"), to recommend that the Farm Property be declared a non-condemnation area in need of redevelopment pursuant to N.J.S.A. 40A:12A-5(c). See **Ex. "A"**.

63.    Five days later, the Board's recommendation was presented at the December 7, 2020 Township Committee meeting.

64.    The Township Committee adopted Resolution 2020-71 on December 7, 2020. See Ex. **"B"**.

65.    The Township subsequently sent Resolution 2020-71 to Lt. Governor Sheila Y. Oliver, Commissioner of the Department of Community Affairs ("DCA"), for DCA review as required by N.J.S.A. 40A:12A-6b(5)(c). See Ex. **"J"**.

66.    On January 14, 2021, the DCA sent a responsive letter to the Township (the "DCA Letter"), wherein the DCA informed the Township it had completed its review of Resolution 2020-71 and "[b]ased on our review, the Township's determination is **not approved.**" (Emphasis added). See Ex. **"J"**.

67.    The DCA Letter stated that its rejection of Resolution 2020-71 was based on the fact that the property at issue was located in Planning Area 4B (Rural Environmentally Sensitive Area) in the State Development and Redevelopment Plan, that the subject property was also located within an Agricultural Development Area pursuant to N.J.A.C. 4:1C-18, that the subject property was additionally identified as a targeted farm for preservation by the Warren County Comprehensive Farmland Preservation Plan, and finally because the Franklin Township Comprehensive Farmland Preservation Plan (adopted as an element of the Township's Master Plan pursuant to N.J.S.A. 40:55D-28) identified the subject property for preservation due to its location within the Musconetcong Project Area. See Ex. **"J"**.

## COUNT ONE – VIOLATION OF N.J.S.A. 40A:12A-5(c)

68.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs of this Complaint as if set forth at length herein.

69.     The conditions at the Farm Property do not provide a basis for determining the Farm Property meets the criteria of Section 5 of the Redevelopment Law.

70.     The location of the Farm Property does not provide a basis for determining the Farm Property meets the criteria of Section 5 of the Redevelopment Law.

71.     The findings in the 2020 K & M Report and the evidence submitted to the Land Use Board in support of a redevelopment designation for the Farm Property was deficient, insubstantial, and was based on erroneous, incomplete, and/or false information.

72.     The 2020 K & M Report and the evidence submitted to the Land Use Board in support of a redevelopment designation for the Farm Property did not constitute substantial evidence in support of its conclusions relating to the Farm Property.

73.     Mr. Kyle and the Land Use Board failed to comprehensively inspect the Farm Property or gather information pertaining to the Farm Property's current and proposed economic utilization.

74.     The 2020 K & M Report and the evidence submitted to the Land Use Board in support of a redevelopment designation for the Farm Property failed to consider the size, type, or economic viability of the agricultural operations at the Farm Property.

75.     The 2020 K & M Report and the evidence submitted to the Land Use Board in support of a redevelopment designation for the Farm Property improperly and incorrectly concluded the Farm Property had remained vacant and unimproved for a period of at least 10 years prior to the K & M Report's preparation.

76.     The 2020 K & M Report's conclusion the Farm Property is vacant and unimproved is inconsistent with its own determination that the parcel is "actively farmed."

77.    The 2020 K & M Report and the evidence submitted to the Land Use Board in support of a redevelopment designation for the Farm Property offered no specific statistics quantifying the extent or effect to which the Farm Property is used for farming.

78.    The 2020 K & M Report and the evidence submitted to the Land Use Board in support of a redevelopment designation for the Farm Property failed to state or analyze how the safety, health, morals or welfare of the Township of Franklin will be affected or improved if the Farm Property is declared in need of redevelopment.

79.    The 2020 K & M Report and the evidence submitted to the Land Use Board in support of a redevelopment designation for the Farm Property failed to adduce any facts or data to demonstrate the Farm Property "is not likely to be developed by private capital alone," as required under N.J.S.A. 40A:12A-5(c).

80.    The 2020 K & M Report's determination that the Farm Property "is not likely to be developed by private capital alone" and that "Redevelopment designation is thus necessary and appropriate to encourage development of the property with uses for which it was zoned" is entirely conclusory, and not based on any facts or legitimate planning or legal analysis.

81.    The Farm Property is in private ownership, has been devoted to its present agricultural use for longer than 10 years prior to the date of the 2020 K & M Report,  its location is not remote,  has direct access to the Township's roadway network, and is located approximately 1.2 miles from Interstate 78 and New Jersey Route 22.

82.    The 2020 K & M Report and the evidence submitted by Mr. Kyle to the Land Use Board in support of a redevelopment designation for the Farm Property constitutes a net opinion and failed to provide substantial evidence supporting its conclusion that the Farm Property satisfies the criteria of Section 5(c) of the Redevelopment Law.

83.    The 2020 K & M Report and the evidence submitted to the Land Use Board in support of a redevelopment designation for the Farm Property set forth no basis at law for the Land Use Board and Township Committee to determine that the Farm Property is in need of redevelopment under the Redevelopment Law.

84.    The improper impetus for Defendants considering whether the Farm Property is an area in need of redevelopment was that a private party, Safavieh, demanded preferential tax treatment as a supposed condition for development of the Farm Property.

85.    Given Safavieh's interest in the Farm Property dating back to at least 2018, the Farm Property is not an appropriate candidate for redevelopment pursuant to the Redevelopment Law.

86.    The purposes of the Redevelopment Law would not be achieved by designating the Farm Property as in need of redevelopment.

87.    No evidence was presented to the Land Use Board that the Farm Property has been effectively marketed for legally permitted development, or could be better utilized by other users.

88.    No evidence was presented to the Land Use Board or Committee that the conditions of the Farm Property were detrimental to the health, safety, morals or welfare of the community.

89.    Neither the 2020 K & M Report, the Land Use Board nor the Committee made any recommendation as to a finding of a need for redevelopment for a public purpose.

90.    The designation of the Farm Property as an Area in Need of Redevelopment was improper and contrary to public policy and the goals of redevelopment.

91.    The Committee improperly adopted a redevelopment designation for the Farm Property to provide additional tax and utility revenue to the Township of Franklin, and/or tax benefits to Safavieh, without regard to whether the Farm Property legitimately qualified as areas in need of redevelopment pursuant to the Redevelopment Law.

92.     The Township improperly imposed its own economic vision for the future of the Farm Property, contrary to the Redevelopment Law, where the area is already productive and functional.

93.     The passage of the December 2 Resolution and Resolution 2020-71 was to assist a private party's land development scheme, not because the governing body was concerned that an area of the municipality was "blighted".

94.     The Township failed to adequately explore whether any developers had interest in, or means of, developing the Farm Property without the need to declare the Farm Property an area in need of redevelopment.

95.     Based on the testimony presented before the Land Use Board, the Farm Property does not meet any of the criteria set forth in Section 5 of the Redevelopment Law and is not in need of redevelopment.

96.     The 2020 K & M Report, relied upon by the Land Use Board and the Committee, constitutes an impermissible net opinion.

97.     The findings of the K & M Report, the Land Use Board, and the Committee were contrary to law, including the Municipal Land Use Law, N.J.S.A. 40:55D-1 *et seq.* and the New Jersey Highlands Water Protection and Planning Act, N.J.S.A. 13:20-1 *et seq.*

98.     The Township's determination that the Farm Property is in need of redevelopment is contrary to the expressed purpose and intent of the Redevelopment Law.

99.     The findings and conclusions of the Land Use Board and the Committee with respect to the Farm Property were not based on substantial evidence.

100.    The Township Committee and Land Use Board failed to determine in an unbiased and fair manner whether the Farm Property qualified as an area in need of redevelopment, rendering their findings as arbitrary, capricious, unreasonable, and contrary to law.

101.    The findings and conclusions of the Land Use Board and the Township Committee with respect to the Farm Property were arbitrary, capricious, unreasonable and contrary to law.

**WHEREFORE**, Plaintiffs demand judgment:

(a)    Setting aside the Recommendation of the Land Use Board of the Township of Franklin, set forth in the December 2, 2020 Resolution, determining there is sufficient evidence the Farm Property is a "non-condemnation area in need of redevelopment" as defined in the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 *et seq.*, and recommending the Township Committee designate the Farm Property as such;

(b)    Setting aside the determination of the Township Committee of Franklin, made December 7, 2020, as memorialized in Resolution 2020-71, adopting the recommendation of the Land Use Board, designating the Farm Property as a "non-condemnation area in need of redevelopment", and instructing the Township's professionals to develop a redevelopment plan for the Farm Property;

(c)    Enjoining and restraining Defendants from taking any further action with regard to the Land Use Board's December 2, 2020 Resolution and Township Committee Resolution 2020-71, and from proceeding with a redevelopment plan for the Farm Property;

(d)    For attorneys' fees, costs of suit and interest; and

(e)    For any and all such other relief as this Court deems equitable and just.

## COUNT TWO – VIOLATION OF REDEVELOPMENT LAW

102.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth at length herein.

103.    N.J.S.A. 40A:12A-8(f) requires that a municipality arrange with redevelopers for the planning, construction, or undertaking of any project or redevelopment work only _after_ a redevelopment designation and adoption of a redevelopment plan.

104.    The actions of the Township Committee and the Land Use Board, and the extensive involvement of Safavieh dating back to 2018, have resulted in Safavieh improperly dictating the redevelopment process undertaken by Defendants for the Farm Property, and effectively having Safavieh being prematurely and improperly chosen as the de facto redeveloper for the Farm Property, all in violation of the Redevelopment Law.

105.    The Township approved an investigation to determine whether the Farm Property was in need for redevelopment based on improper purposes initiated by Safavieh, a private party.

106.    Upon information and belief, prior to November 30, 2019, representatives of Safavieh initiated substantive discussions with representatives and officials of the Township concerning Safavieh's plan for the development of the Farm Property.

107.    In the January 21 Safavieh Letter, Safavieh informed Township officials it would develop the Farm Property only if the Township were to, among other things, declare the Farm Property an area in need of redevelopment and provide a 30 year tax abatement. See **Ex. "D"**.

108.    In the January 21 Safavieh Letter, Safavieh informed Township officials it would develop the Farm Property only if the Township were to, among other things, "designate the 'Urban Renewal Entity', as such term is defined in the Redevelopment Law, formed by Safavieh (the 'Safavieh URE') for such purpose as the designated redeveloper of the Project." See **Ex. "D"**.

109.    Upon information and belief, zoning officer and Land Use Board Member Mr. Onembo, Mayor DeAngelis, and/or members of the Township Committee, participated in substantive discussions and negotiations with Safavieh and its employees, agents, and/or representatives concerning redevelopment of the Farm Property, including active redevelopment plans, prior to the Township authorizing the redevelopment study and designating the Farm Property as in need of redevelopment, in violation of the Redevelopment Law.

110.    Upon information and belief, Mr. Kyle and members of the Committee and/or Board had inappropriate contact, communications and meetings with Safavieh officials prior to Mr. Kyle's drafting of both the 2019 K & M Report and the 2020 K & M Report and prior to the 2020 redevelopment hearings.

111.    Upon information and belief, at Safavieh's request, the Township made an improper, de facto selection of Safavieh or its affiliate as the "redeveloper" for the Farm Property

under the Redevelopment Law, and Safavieh had significant input in determining the Farm Property should be designated as an area in need of development, all prior to the Township authorizing the 2020 K&M Report  and prior to the adoption of Land Use Board's December 2, 2020 Resolution and Township Committee Resolution 2020-71, in violation of the Redevelopment Law.

112.    Upon information and belief, Safavieh improperly presented a concept plan to the Township of Franklin for consideration prior to the Committee authorizing the 2019 or the 2020 K&M Report.

113.    The 2019 K&M Report and the 2020 K&M Report were improperly initiated at the suggestion of Safavieh so that the Farm Property could be developed for Safavieh's private profit.

114.    Safavieh improperly influenced the redevelopment process in the Township of Franklin in violation of law, including the Redevelopment Law.

115.    The Township's contacts with Safavieh constitute impermissible favoritism towards a private party, and redevelopment should not occur for a favored, private entity that is providing inappropriate and significant private input into the redevelopment process.

**WHEREFORE**, Plaintiffs demand judgment:

(a)    Setting aside the Recommendation of the Land Use Board of the Township of Franklin, set forth in the December 2, 2020 Resolution, determining there is sufficient evidence the Farm Property is a "non-condemnation area in need of redevelopment" as defined in the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 *et seq.*, and recommending the Township Committee designate the Farm Property as such;

(b)    Setting aside the determination of the Township Committee of Franklin, made December 7, 2020, as memorialized in Resolution 2020-71, adopting the recommendation of the Land Use Board, designating the Farm Property as a "non-condemnation area in need of redevelopment", and instructing the Township's professionals to develop a redevelopment plan for the Farm Property;

(c)    Enjoining and restraining Defendants from taking any further action with regard to the Land Use Board's December 2, 2020 Resolution and Township Committee Resolution 2020-71, and from proceeding with a redevelopment plan for the Farm Property;

(d)    For attorneys' fees, costs of suit and interest; and

(e)    For any and all such other relief as this Court deems equitable and just.

**COUNT THREE – VIOLATIONS OF THE N.J. CONST.;
N.J.S.A. 10:6-1 *et seq.*,**

116.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth at length herein.

117.    All actions taken by the Land Use Board and the Township Committee were done under color of law.

118.    The actions taken by the Land Use Board and the Township Committee caused the deprivation of Plaintiffs' due process rights by denying Plaintiffs their Constitutionally-protected due process rights to a fair and unbiased hearing.

119.    Plaintiffs' due process rights were established and well-settled at the time of the deprivation caused by the actions of the Land Use Board and the Township Committee.

120.    The arbitrary and predetermined findings of the Township Committee and the Land Use Board deprived Plaintiffs of their Constitutionally-guaranteed right to due process and a fair hearing.

121.    The Land Use Board refused to consider in an unbiased and fair manner evidence and legal argument presented at the aforementioned Land Use Board hearings in opposition to any redevelopment designation for the Farm Property.

122.    In the January 21 Safavieh Letter, Safavieh confirmed meeting with members of the Township Committee and Land Use Board, and set forth its demands that the Township Committee authorize an investigation of the Farm Property, subsequently designate the Farm Property as an area in need of redevelopment, adopt a redevelopment plan specifically tailored to Safavieh's private interests, appoint Safavieh as the redevelopment authority for the Farm

Property, and provide Safavieh with a long-term tax exemption for the Farm Property. See **Ex. "D"**.

123.    Safavieh, in the October 19 Safavieh Letter, impermissibly pressured and persuaded the Township Committee and Land Use Board to deny Plaintiffs' due process rights by demanding that the Township Committee and Land Use Board abruptly conclude all hearings on the matter and designate the Farm Property as an area in need of redevelopment. See **Ex. "I"**.

124.    The October 19 Safavieh Letter indicates  that members of the Township Committee  met with Safavieh and/or  discussed designating the Farm Property as an area in need of redevelopment at various times including in March of 2019, prior to the Township Committee approving the statutorily-required authorization to investigate whether the Farm Property could be designated as an area in need of redevelopment, and prior to the Township Committee designating the Farm Property as in need of redevelopment. See **Ex. "I"**.

125.    The investigation of the Farm Property was impermissibly suggested and initiated by Safavieh, the de facto redevelopment agent, with the foregone conclusion that the Farm Property would be designated as an area in need of redevelopment for the sole purpose of Safavieh's economic benefit.

126.    Members of the Township Committee impermissibly met and/or communicated with Safavieh on multiple occasions prior to the Township Committee approving statutorily-required authorization to investigate the Farm Property and allowed Safavieh to unfairly and unduly influence all hearings and investigations regarding the Farm Property. See **Ex. "D", "I"**.

127.    Members of the Township Committee and the Land Use Board, at the impermissible suggestion of Safavieh, predetermined that the Farm Property would be designated as an area in need of redevelopment prior to the statutorily-required authorization to investigate the Farm Property.

128.    The Township Committee and Land Use Board predetermined that the Farm Property would be designated as an area in need of redevelopment prior to authorizing both the 2019 K & M Report and the 2020 K & M Report, as well as prior to analyzing and considering the facts of both the 2019 K & M Report and the 2020 K & M Report.

129.    The Township Committee and Land Use Board predetermined that the Farm Property would be designated as an area in need of redevelopment prior to conducting any hearings regarding the Farm Property.

130.    All attempts to obtain a fair hearing by Plaintiffs were futile due to the predetermined actions and decisions by the Land Use Board and Township Committee.

131.    The procedures, actions, and decisions of the Land Use Board and the Township Committee which deprived Plaintiffs of their due process rights demonstrate egregious government misconduct that shocks the conscience.

132.    The procedures, actions, and decisions of the Land Use Board and the Township Committee in relying on the impermissible net opinion in the 2020 K & M Report were arbitrary, capricious, unreasonable, and a manifest abuse of power.

133.    The procedures, actions, and decisions of the Land Use Board in approving the December 2 Resolution were arbitrary, capricious, unreasonable, and a manifest abuse of power.

134.    The procedures, actions, and decisions of the Township Committee in approving Resolution 2020-71 were arbitrary, capricious, unreasonable, and a manifest abuse of power.

135.    The procedures, actions, and decisions of the Land Use Board and Township Committee in allowing Safavieh to impermissibly and unduly influence the aforementioned proceedings were arbitrary, capricious, unreasonable, and a manifest abuse of power.

136.    The procedures, actions, and decisions of the Land Use Board and Township Committee in allowing Safavieh to impermissibly and unduly influence the aforementioned proceedings shocks the conscience.

137.    The procedures, actions, and decisions of the Land Use Board and Township Committee in predetermining that the Farm Property would be designated as an area in need of redevelopment prior to any investigations and testimony were arbitrary, capricious, unreasonable, and a manifest abuse of power.

138.    The procedures, actions, and decisions of the Land Use Board and Township Committee in predetermining that the Farm Property would be designated as an area in need of redevelopment prior to any investigations and testimony shocks the conscience.

139.    The actions of the Land Use Board and the Township Committee constitute final decisions by the respective municipal bodies.

140.    Plaintiffs reasonably expected to have the Defendants and its officials, employees and agents, as government officials, exercise its duty to properly act to protect Plaintiffs' constitutional due process, equal protection and property rights.

141.    The actions of the Defendants and its officials, officers, employees, and agents, in designating the Farm Property as in need of redevelopment, was not logically or legally supportable, was arbitrary, capricious and unreasonable, was an abuse of discretion, and constitutes a denial of the property and liberty rights of the Plaintiffs under color of state law and in violation of the Constitution of New Jersey and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.* (the "NJCRA").

142.    Officials, officers, agents and employees of Defendants knew or should have known that the Farm Property did not qualify as a matter of fact and law as in need of redevelopment.

143. Having acted without lawful warrant under color of state and laws to deprive Plaintiffs of their constitutional rights, the Defendants are liable to Plaintiffs under the NJCRA and the New Jersey Constitution.

144. Plaintiffs were deprived of their rights to due process and equal protection, and were denied their right to fair and unbiased proceedings by the Land Use Board and Township Committee's actions in furtherance of their designating the Farm Property as an area in need of redevelopment prior to the commencement of any official proceedings and investigations.

145. Said actions of the Land Use Board rendered the Board's and the Township Committee's findings and resolutions adopted in furtherance of same, as invalid, arbitrary, capricious, and contrary to law.

146. Plaintiffs are without alternative relief, administrative or otherwise, and therefore resort to intervention by the Court.

**WHEREFORE**, Plaintiffs demand judgment:

(a) Setting aside the Recommendation of the Land Use Board of the Township of Franklin, set forth in the December 2, 2020 Resolution, determining there is sufficient evidence the Farm Property is a "non-condemnation area in need of redevelopment" as defined in the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 *et seq.*, and recommending the Township Committee designate the Farm Property as such;

(b) Setting aside the determination of the Township Committee of Franklin, made December 7, 2020, as memorialized in Resolution 2020-71, adopting the recommendation of the Land Use Board, designating the Farm Property as a "non-condemnation area in need of redevelopment", and instructing the Township's professionals to develop a redevelopment plan for the Farm Property;

(c) Enjoining and restraining Defendants from taking any further action with regard to the Land Use Board's December 2, 2020 Resolution and Township Committee Resolution 2020-71, and from proceeding with a redevelopment plan for the Farm Property;

(d) Damages pursuant to N.J.S.A. 10:6-1, *et seq.*;

(e) Punitive damages;

(f) For reasonable attorney's fees and expert fees pursuant to N.J.S.A. 10:6-2(f);

(g)    For attorneys' fees, costs of suit and interest; and

(h)    For any and all such other relief as this Court deems equitable and just.

**COUNT FOUR – VIOLATIONS OF N.J. CONST.; N.J.S.A.
10:6-1 *et seq.*, CIVIL CONSPIRACY**

147.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth at length herein.

148.    Members of the Township Committee and Land Use Board conspired with each other and with Safavieh with the intent to deprive Plaintiffs of their due process and equal protection rights under the Constitution of the State of New Jersey, and the NJCRA.

149.    All actions taken by the Land Use Board and the Township Committee in furtherance of the conspiracy with the intent to deprive Plaintiffs of their due process and equal protection rights were done under color of law.

150.    Plaintiffs have Constitutionally-recognized property interests and rights to a fair and unbiased hearing, and Plaintiffs' due process and equal protection rights were violated by the actions in furtherance of the Township Committee and Land Use Board's conspiracy to deprive Plaintiffs of their due process and equal protection rights by conducting multiple sham investigations and hearings with the foregone conclusion that the Farm Property would be designated an area in need of redevelopment regardless of any evidence or testimony presented.

151.    The extensive and impermissible involvement of Safavieh, the Township Committee, and Land Use Board were undertaken with the intent to further the conspiracy to deprive Plaintiffs of their due process and equal protection rights through sham investigations and hearings with the predetermined intent to declare the Farm Property an area in need of

redevelopment, which caused injury by depriving Plaintiffs of their rights pursuant to the Redevelopment Law.

152.    The Township Committee, Land Use Board, and Safavieh's conspiracy began in or before 2018, when Defendants met with Safavieh to discuss the redevelopment of the Farm Property prior to any authorization by the Township Committee to conduct the statutorily-required redevelopment investigation. See **Ex. "D"**.

153.    In furtherance of the conspiracy, Safavieh set forth in the January 21 Safavieh Letter the acts which the Land Uses Board and Township Committee would undertake, which included:

- Declaring the Farm Property an "area in need of redevelopment";
- Adopting a redevelopment plan in accordance with the terms most favorable to Safavieh;
- Designation of Safavieh as the "Urban Renewal Entity" for such purpose as the designated redeveloper of the Farm Property;
- Authorization of a long-term tax exemption "financial agreement" as defined by N.J.S.A. 40A:20-1 *et seq.*, between Defendants and Safavieh;
- Issuance by the Township Committee of a redevelopment area bond as defined by N.J.S.A. 40A:12-64.

154.    The meeting between Safavieh and "you [Mayor DeAngelis] and your staff" prior to January 21, 2019 establishes an overt act in a conspiracy to deprive Plaintiffs of their equal protection and due process rights by denying Plaintiffs the opportunity for a fair and unbiased proceeding before the Land Use Board and the Township Committee. See **Ex. "D"**.

155.    The meeting between Safavieh and Defendants, as memorialized by the January 21 Safavieh Letter, which occurred prior to the statutorily-required Township Committee Resolution authorizing the Land Use Board to conduct an investigation to determine whether the Farm Property was an area in need of rehabilitation, was in furtherance of a conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

26

156.    The ongoing meetings between members of the Township Committee, Land Use Board, and Safavieh, as confirmed in the October 19 Safavieh Letter, occurring prior to the statutorily-required Township Committee Resolution authorizing the Land Use Board to conduct an investigation to determine whether the Farm Property was an area in need of rehabilitation, were in furtherance of a conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

157.    Additionally, the November 2018 Onembo Letter was sent in furtherance of the conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be found to be an area in need of redevelopment pursuant to the Redevelopment Law and prior to the statutorily-required Township Committee Resolution authorizing the Land Use Board to conduct an investigation into whether the Farm Property constituted an area in need of redevelopment.

158.    The February 4, 2019 Township Committee Resolution 2019-34, which authorized the Land Use Board to conduct an investigation to determine whether the Farm Property was an area in need of redevelopment, was passed in furtherance of a conspiracy to deprive Plaintiffs of their equal protection and due process rights by authorizing a sham investigation with a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

159.    The April 1, 2019 Letter from Mayor DeAngelis to the NJDEP requesting Flood Hazard Area Verification Approval and a Flood Hazard Area Applicability Determination was an act in furtherance of the conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be designated an area in need of redevelopment prior to any findings of fact by the 2019 K & M Report.

160.    The 2019 K & M Report made arbitrary, capricious, and factually inaccurate conclusions regarding the Farm Property in furtherance of the conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

161.    The Land Use Board's reliance on the 2019 K & M Report and the Land Use Board's approval of the May 1 Resolution were in furtherance of the conspiracy to deprive Plaintiffs of their due process and equal protection rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment, and Plaintiffs were denied their due process right to a fair hearing.

162.    The Township Committee's approval of Resolution 2019-48 was in furtherance of the conspiracy to deprive Plaintiffs of their due process and equal protection rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment, and Plaintiffs were denied their due process right to a fair hearing.

163.    As a result of Defendants' actions in furtherance of the conspiracy to deprive Plaintiffs of their due process and equal protection rights, the May 1 Resolution and Resolution 2019-48 were both declared null and void due to impermissible conflicts of interest. See **Ex. "C"**.

164.    After the aforementioned sham proceedings were invalidated by the Consent Order, the Township Committee and Land Use Board nevertheless persisted in their conspiracy to deprive Plaintiffs of their due process and equal protection rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

165.    The 2020 K & M Report made arbitrary, capricious, and factually inaccurate conclusions regarding the Farm Property in furtherance of the conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

166.    The Land Use Board's February 26, 2020 hearing was undertaken with the preconceived notion that the Farm Property would be designated as an area in need of redevelopment regardless of any evidence and testimony presented therein.

167.    The arbitrary, capricious, and otherwise unlawful actions of the Land Use Board at the February 26, 2020 hearing were in furtherance of the conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

168.    The arbitrary, capricious, and otherwise unlawful actions of the Land Use Board at the February 26, 2020 hearing deprived Plaintiffs of having and exercising their due process and equal protection rights to an unbiased proceeding.

169.    The Land Use Board's March 11, 2020 hearing was undertaken with the preconceived notion that the Farm Property would be designated as an area in need of redevelopment regardless of any evidence and testimony presented therein.

170.    The arbitrary, capricious, and otherwise unlawful actions of the Land Use Board at the March 11, 2020 hearing were in furtherance of the conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

171.    The arbitrary, capricious, and otherwise unlawful actions of the Land Use Board at the March 11, 2020 hearing deprived Plaintiffs of having and exercising their due process and equal protection rights to an unbiased proceeding.

172.    The Land Use Board's November 11, 2020 hearing was undertaken with the preconceived notion that the Farm Property would be designated as an area in need of redevelopment regardless of any evidence and testimony presented therein.

173.    The arbitrary, capricious, and otherwise unlawful actions of the Land Use Board at the November 11, 2020 hearing were in furtherance of the conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

174.    The arbitrary, capricious, and otherwise unlawful actions of the Land Use Board at the November 11, 2020 hearing deprived Plaintiffs of having and exercising their due process and equal protection rights to an unbiased proceeding.

175.    The Land Use Board's November 23, 2020 hearing was undertaken with the preconceived notion that the Farm Property would be designated as an area in need of redevelopment regardless of any evidence and testimony presented therein.

176.    The arbitrary, capricious, and otherwise unlawful actions of the Land Use Board at the November 23, 2020 hearing were in furtherance of the conspiracy to deprive Plaintiffs of their equal protection and due process rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

177.    The arbitrary, capricious, and otherwise unlawful actions of the Land Use Board at the November 23, 2020 hearing deprived Plaintiffs of having and exercising their due process and equal protection rights to an unbiased proceeding.

178.    The Land Use Board's reliance on the impermissible net opinions contained in the 2020 K & M Report and subsequent approval of the December 2 Resolution were in furtherance of the conspiracy to deprive Plaintiffs of their due process and equal protection rights by treating as a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

179.    The Township Committee's approval of Resolution 2020-71 was in furtherance of the conspiracy to deprive Plaintiffs of their due process and equal protection rights by treating as

a foregone conclusion that the Farm Property would be designated as an area in need of redevelopment.

180.    Plaintiffs were deprived of having and exercising their rights to due process and equal protection, and were denied their right to fair and unbiased proceedings by the Land Use Board and Township Committee's actions in furtherance of their conspiracy to designate the Farm Property as an area in need of redevelopment prior to the commencement of any official proceedings and investigations.

181.    Defendants who did not directly participate in the conspiracy to deprive Plaintiffs of their due process and equal protection rights nevertheless had knowledge of the wrongs conspired to be done or about to be committed, had the power to prevent or aid in preventing the commission of same which could have been prevented by reasonable diligence, but neglected or refused to do so.

182.    Said actions of the Land Use Board rendered the Board's and the Township Committee's findings and resolutions adopted in furtherance of same, as invalid, arbitrary, capricious, and contrary to law.

**WHEREFORE**, Plaintiffs demand judgment:

(a)    Setting aside the Recommendation of the Land Use Board of the Township of Franklin, set forth in the December 2, 2020 Resolution, determining there is sufficient evidence the Farm Property is a "non-condemnation area in need of redevelopment" as defined in the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 *et seq*., and recommending the Township Committee designate the Farm Property as such;

(b)    Setting aside the determination of the Township Committee of Franklin, made December 7, 2020, as memorialized in Resolution 2020-71, adopting the recommendation of the Land Use Board, designating the Farm Property as a "non-condemnation area in need of redevelopment", and instructing the Township's professionals to develop a redevelopment plan for the Farm Property;

(c)    Enjoining and restraining Defendants from taking any further action with regard to the Land Use Board's December 2, 2020 Resolution and Township Committee Resolution 2020-71, and from proceeding with a redevelopment plan for the Farm Property;

(d)     Damages pursuant <u>N.J.S.A.</u> 10:6-1 *et seq.*;

(e)     Punitive damages;

(f)     For reasonable attorneys' fees and expert fees pursuant to <u>N.J.S.A.</u> 10:6-2(f);

(g)     For attorneys' fees, costs of suit and interest; and

(h)     For any and all such other relief as this Court deems equitable and just.


HEROLD LAW, P.A.
*Attorneys for Plaintiffs*


By: <u>*/s/ Robert F. Simon, Esq.*</u>
Robert F. Simon, Esq.

Dated:  April 15, 2021

## DESIGNATION OF TRIAL COUNSEL

Pursuant to <u>R</u>. 4:25-4, Robert F. Simon, Esq. is hereby designated as trial counsel for Plaintiffs.

HEROLD LAW, P.A.
*Attorneys for Plaintiffs*


By: */s/ Robert F. Simon, Esq.*
Robert F. Simon, Esq.

Dated:  April 15, 2021




## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that a related matter is currently pending in the Superior Court of New Jersey, Law Division, Warren County, bearing Docket No.: WRN-L-0167-19. I further certify that I know of no other parties who should be joined in this matter at the present time.


HEROLD LAW, P.A.
*Attorneys for Plaintiffs*


By: */s/ Robert F. Simon, Esq.*
Robert F. Simon, Esq.

Dated: April 15, 2021

## CERTIFICATION PURSUANT TO RULE 4:69-4

I hereby certify that all necessary transcripts of local agency proceedings in this cause have been ordered.


HEROLD LAW, P.A.
*Attorneys for Plaintiffs*


By: */s/ Robert F. Simon, Esq.*
Robert F. Simon, Esq.

Dated:  April 15, 2021

# EXHIBIT "A"

## FRANKLIN TOWNSHIP LAND USE BOARD

### RESOLUTION

**DECIDED: NOVEMBER 23, 2020**
**MEMORIALIZED: DECEMBER 2, 2020**

**MEMORIALIZING RESOLUTION OF THE
LAND USE BOARD OF THE TOWNSHIP OF
FRANKLIN, COUNTY OF WARREN, NEW JERSEY
RECOMMENDING THAT A CERTAIN PROPERTY
LOCATED ON BLOOMSBURY-ASBURY ROAD
AND DESIGNATED AS BLOCK 58, LOT 1 ON THE
TOWNSHIP OF FRANKLIN TAX MAPS BE
DESIGNATED AS A NON-CONDEMNATION AREA
IN NEED OF REDEVELOPMENT**

**WHEREAS**, the Local Redevelopment and Housing Law, N.J.S.A 40A:12A-1 et seq. (the "Redevelopment Law") authorizes municipalities to determine whether certain parcels of land within the municipality constitute an area in need of redevelopment as defined in the Redevelopment Law; and

**WHEREAS**, on February 4, 2019, the Township Committee of the Township of Franklin adopted Resolution 2019-34 authorizing and directing the Land Use Board to undertake a preliminary investigation to determine whether the property designated as Block 58, Lot 1 on the tax maps of the Township of Franklin ("Subject Property" or "Study Area") would qualify as an area in need of redevelopment; and

**WHEREAS,** on May 1, 2019, a public hearing was held by the Land Use Board of the Township of Franklin ("Board") on whether to recommend that the Township Committee designate the Study Area as an area in need of redevelopment under the Redevelopment Law; and

1

**WHEREAS,** at the conclusion of the public hearing, the Board adopted a Resolution recommending that the study area be declared a non-condemnation area in need of redevelopment in accordance with the Redevelopment Law; and

**WHEREAS**, on May 6, 2019, the Township Committee adopted a Resolution memorializing the designation of the Study Area as a non-condemnation area in need of redevelopment under the Redevelopment Law; and

**WHEREAS,** thereafter, certain interested parties filed a Complaint in Lieu of Prerogative Writ in the matter captioned <u>Heisler et al. v. Township of Franklin</u>, Superior Court of New Jersey, Law Division, Warren County, New Jersey, Docket No. WRN-L-000167-19 seeking to set aside the recommendation of the Board that the Subject Property is a non-condemnation area in need of redevelopment and to further set aside the determination of the Township Committee adopting the recommendation of the Land Use Board designating the Subject Property as a non-condemnation area in need of redevelopment; and

**WHEREAS,** by Consent Order dated January 3, 2020, the matter was remanded to the Board to enable the Board to conduct a new hearing pursuant to N.J.S.A. 40A:12A-6 to determine whether the Subject Property meets any of the criteria of N.J.S.A. 40A:12A-5 to be an area in need of redevelopment and to the Township Committee for its review of the Board's recommendation/determination; and

**WHEREAS,** in accordance with the provisions of the Consent Order, the Board conducted four public hearings on February 26, 2020; March 11, 2020; November 11, 2020; and November 23, 2020; and

**WHEREAS,** the Board hereby makes the following findings of fact and conclusions of law:

1.     The Board is in receipt of a report entitled "Preliminary Investigation of Block 58, Lot 1" prepared by James T. Kyle, P.P., AICP, dated January 24, 2020, and a report from Peter G. Steck, P.P., entitled "Planning Evaluation Area in Need of Redevelopment Study Preliminary Investigation of Block 58, Lot 1, Franklin Township, Warren County, New Jersey", prepared for Robert Simon, Esq. on behalf of Tracey Heisler, et al.  Both Mr. Kyle and Mr. Steck presented expert testimony in support of their respective reports.  In addition, the Board further considered the testimony of Robert Berlant, a representative of the property owner, as well as the public comments of various members of the public who were both afforded the opportunity to question all witnesses and make public comments at the conclusion of the public hearing process.

2.     The Subject Property consists of approximately 112 acres of land located on the north side of Asbury-Bloomsbury Road, located opposite Lime Kiln Road in the southwest corner of Franklin Township.  The property is actively farmed.  The subject site has no wetlands and has limited areas of critical slopes, as defined by the New Jersey Highlands Council, along its northern boundary.  While the site is not characterized by an abundance of constrained slopes, the property exhibits a wide range of elevation ranging from 506 feet above sea level in the northeast most corner of the property and an elevation of approximately 304 feet above sea level at the southwestern most corner of the Subject Property.  The drop in elevation represents a 4.8% grade.  There is a single unnamed tributary to the Musconetcong River located in the southwest quadrant of the site that eventually drains to the Musconetcong River after crossing under Asbury-Bloomsbury Road.  For the calendar year 2019, based on its classification as farmland assessed (Classification 3B), $2,191.37 in property taxes were paid for the property comprising 111.52 acres.

3.     The Subject Property is located within the Township's Industrial District and has been zoned industrial since at least 1992, although properties immediately to the west have been

3

zoned Industrial since approximately February 1979. Currently permitted uses within the

Industrial District include storage and warehouse, wholesaling, processing, light manufacturing

and assembly, office research and laboratory use, computer and data processing centers,

agricultural uses, and wireless telecommunications antennas placed on existing structures. The

property is located within the Highlands Planning Area.

     4.     Mr. Kyle, in both his report and testimony at the public hearings, reviewed the

process by which a property may be deemed as one in need of redevelopment, as well as the

applicable statutory criteria that must be satisfied in order for the property to qualify as one being

deemed in need of redevelopment. With specific reference to the statutory criteria, Mr. Kyle

reviewed the provisions of N.J.S.A. 40A:12A-5. He noted that if any of the conditions specified

in the statute exist, the property may qualify as one in need of redevelopment. In this case, Mr.

Kyle relied solely on N.J.S.A. 40A:12A-5c, which provides as follows:

> "Land that is owned by the municipality, the county, a local
> housing authority, redevelopment agency or redevelopment entity,
> or unimproved vacant land that has remained so for a period of ten
> years prior to adoption of the resolution, and that by reason of its
> location, remoteness, lack of means of access to developed
> sections or portions of the municipality, or topography, or nature of
> the soil, is not likely to be developed through the instrumentality of
> private capital."

Mr. Kyle noted that the critical initial inquiry under the statute is whether the land in question is

"unimproved vacant land" that has remained so for a period of ten years prior to the adoption of

the Resolution. Mr. Kyle noted that neither the New Jersey Municipal Land Use Law nor the

New Jersey Redevelopment Law defines the terms "unimproved" or "vacant". Therefore,

according to Mr. Kyle, in the absence of statutory guidance, it was appropriate to refer to other

sources to assist in coming to an understanding of the appropriate definitions of "unimproved"

and "vacant" land. Mr. Kyle relied on <u>The Complete Illustrated Book of Development</u>

Definitions, 4th Edition, written by Harvey S. Moskowitz, Carl G. Lindbloom, David Listokin, Richard Preiss, and Dwight H. Merriam, published in 2015, which he referred to as a treatise that many planners rely on. Mr. Kyle reviewed for the Board the respective definitions within the Moskowitz treatise of "vacant land", "unimproved land", and "improvement". Mr. Kyle acknowledged that the current use of the Subject Property is agricultural and that it has been actively farmed since at least 1930. However, in the opinion of Mr. Kyle, the absence of any physical improvements supports the conclusion that the property is vacant and unimproved. Mr. Kyle noted that with the exception of a shared gravel driveway, the property has no physical improvements. The shared driveway comprises only 0.02% of the Subject Property. There are no physical improvements relating to the current agricultural use. In the opinion of Mr. Kyle, the fact that the property has been devoted to agricultural use, does not mean that the property does not qualify as unimproved vacant land. A "use" of the property (agricultural) does not preclude a finding that the property is vacant. The absence of any physical improvements does support a conclusion that it is unimproved.

5.     The opinion of Mr. Kyle that the property is unimproved vacant land does not end the inquiry as to whether the statutory criteria are satisfied. The statute further requires that, even if the property is unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, there must be a finding that the property, by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality or topography or nature of the soil, is not likely to be developed through the instrumentality of private capital. Mr. Kyle did not rely on the portion of the statute that relates to the topography or the nature of the soil in rendering his opinion. Instead Mr. Kyle relied on the property's location, remoteness and lack of means access to the developed sections of the Township. The Subject Property is located approximately one mile from Route 78. Mr. Kyle

5

noted that that proximity was perceived when the property was first zoned industrial approximately 28 years ago, to be an advantage to attracting development for industrial use to this portion of Franklin Township. However, the reality, as noted by Mr. Kyle, is that the parcel zoned for industrial use has not been developed for its primary principal use, notwithstanding its location approximately one mile from Route 78. Mr. Kyle therefore opined that, by virtue of the property's location, the property was not likely to be developed by private capital alone and that the redevelopment designation is necessary and appropriate to encourage development of the property for its principally permitted zone uses.

6.    Peter Steck, on behalf of the Plaintiffs in the pending litigation, rendered a contrary opinion as to whether the statutory criteria were satisfied in this case. Mr. Steck opined that the property is not vacant property as required by the statutory criteria since it is currently used for agricultural purposes and has been an agricultural use for 90 years. In his opinion, it would be improper to conclude that the Subject Property is vacant land because the fact that it is used for agricultural purposes shows it is not vacant land. In support of that opinion, Mr. Steck relied extensively on the tax assessment by the Franklin Township Tax Assessor, which classified the property as Class 3B Qualified Farmland, arguing that if the property was vacant, it would alternatively be classified as Class 1. Mr. Steck acknowledged that that opinion was predicated on a determination by a tax assessor for tax purposes. Mr. Steck did not concur with the opinion of Mr. Kyle that the absence of physical improvements (which he acknowledged comprises only 0.02% of the Subject Property) would support a conclusion that the property is vacant land. Mr. Steck further opined that the property is not unimproved as required by the statute. In his opinion, the property is not unimproved because it has been "manipulated" by virtue of the property being seasonally tilled and harvested and therefore it has been "improved" for agricultural purposes. Mr. Steck further rejected the argument that the second prong of the

6

statute, which requires a finding that by reason of its location, remoteness, or lack of means of access to developed sections or portions of the municipality, is not likely to be developed through the instrumentality of private capital. Mr. Steck opined that this prong of the statute was not satisfied on the basis that the property has over 900 feet of frontage on a county highway that links directly to an interstate highway less than one-mile away. Mr. Steck's summary planning evaluation was that no substantial or credible evidence had been presented that would warrant an area in need of redevelopment designation for the Subject Property based on Criteria C of the Redevelopment and Housing Law.

7.    The Board finds that the statutory criteria of N.J.S.A. 40A:12A-5c have been satisfied. In first addressing the threshold issue of whether the land is unimproved vacant land, the Board concludes that it is. It interprets the phrase "vacant unimproved land" as being land that does not contain any physical improvement. The Subject Property contains only 0.02% of improvements relating solely to a shared gravel, dirt driveway. It is the conclusion of the Board that the phrase "vacant unimproved land" relates to the absence or presence of physical structures and not a "use" of the Subject Property. While it acknowledges that the property is currently devoted to agricultural use, which is a permitted use within the zone district (as well as every other zone district within the Township), that use does not preclude a finding that the property is vacant land. It rejects Mr. Steck's reliance on taxation classification utilized by tax assessors as being dispositive of whether the property is vacant. It also does not accept the conclusion proffered by Mr. Steck that merely by virtue of the property being seasonally tilled and harvested the property is not unimproved land.

8.    Having determined that the property is vacant unimproved land, and that it has remained so for a period of ten years prior to this Resolution, the Board nevertheless must also find that by virtue of the property's location, remoteness, or lack of means of access to developed

7

sections of the municipality, the property is not likely to be developed through the instrumentality of private capital. The Board does note the property's location approximately one mile from Route 78. That fact is not disputed by Mr. Steck. Notwithstanding the proximity to Route 78, the Board is able to find, by virtue of the property's location, remoteness, and lack of means of access to Route 78, the property is not likely to be developed through the instrumentality of private capital. The Board members themselves are obviously most familiar with local conditions. While physically proximate to Route 78 in terms of distance, the property, by virtue of its location, does not have an efficient, reasonable means of access to Route 78 constituting the developed section of the Township. Any large truck exiting the property is precluded from making a left turn onto Route 173 by virtue of posted weight limitations, which thereby precludes access to Route 78 in the eastbound direction. That leaves only a westbound alternative for large truck traffic exiting the Subject Property. The property's location and lack of means of efficient access to Route 78 provides a reasonable explanation as to why the Subject Property has not been developed for its principal permitted use in the 28 years since it has been zoned for industrial use. Mr. Kyle noted the history of the property's zoning dating back to 1992, at which time the property was zoned for industrial use, although properties to the west of the Subject Property have already been zoned for industrial use. At the time of that zoning enactment in 1992, Mr. Kyle notes that the location was seen as an advantage to attract industrial development to this portion of the Township of Franklin, but that almost 28 years later, the Study Area and other nearby parcels zoned for industrial use have not yet been developed for that principal, permitted industrial use. Therefore, he concludes that, by virtue of the property's location, it is not likely to be developed by private capital alone. The Board concurs in that conclusion and concludes that the difficult means of access to Route 78, as reflected above, is

8

evidence of the fact that the property has not and will not likely be developed for its principal permitted use by the instrumentality of private capital alone.

9.     Mr. Steck, while obviously not concurring in the opinion advanced by Mr. Kyle, does acknowledge an appropriate role of local government where the conditions of the statute are otherwise satisfied.  Mr. Steck specifically notes that the specific purpose of the Housing and Redevelopment Law is to redevelop blighted properties, which may be achieved only through the efforts of local government when for reasons of attended to the blighted condition, the private market will not step in to correct or ameliorate the blighted condition[1].  Having found in fact that the Subject Property is in a blighted condition and in need or redevelopment, this matter represents a classic case of the need of the local government utilize the redevelopment statute since the private market has not stepped in to correct or ameliorate the condition.  The reality of the history of the subject property is that it has been reasonably marketed for industrial purposes for an extended period of time as testified to by Mr. Berlant, but it has not been able to be developed for its principal permitted use.  This zone district is one of only two zone districts in which industrial uses are permitted within the Township of Franklin.  The Township is in large measure significantly encumbered by the Highlands Preservation Area comprising approximately 25% of the Township.  The property has been zoned for industrial use for 28 years and no Master Plan since that time has ever made a recommendation to change the underlying industrial zoning.  The Board concludes that what is evident is that, notwithstanding the reasonable marketing efforts of this Subject Property and current zoning that permits the use of the Subject Property for industrial use, the Subject Property has not been, by virtue of its

---

[1] As acknowledged by Mr. Steck, the phrase "blighted area" has the same meaning as an area in need of redevelopment.  The Board notes that certain members of the public articulated a position that equates "blighted" as constituting dilapidated structures in a built-up city area.  That is clearly not the definition that governs this application.

location and lack of efficient access to Route 78, been able to be developed by the instrumentality of private capital alone. Accordingly, the Board does conclude that this case represents an appropriate utilization for use of the redevelopment criteria pursuant to N.J.S.A. 40A:12A-5c.

**NOW, THEREFORE, BE IT RESOLVED** by the Land Use Board of the Township of Franklin as follows:

1. After consideration of all evidence presented and all testimony offered during the course of the public hearing process, the Land Use Board recommends that the Study Area, as defined in the Preliminary Investigation Report prepared by Kyle and McManus Associates dated January 24, 2020 be declared a non-condemnation area in need of redevelopment in accordance with the Redevelopment Law for the reasons herein set forth.

2. This Resolution shall take effect immediately.

IN FAVOR OF THE BOARD ACTION TAKEN ON DECEMBER 2, 2020 APPROVING THIS APPLICATION.

OPPOSED:

ABSTAINED:

The undersigned Chairman of the Franklin Township Land Use Board hereby certifies that the within is a true copy of the Resolution memorializing the action taken by the Land Use Board at its meeting held on November 23, 2020, which was adopted by the Board at its meeting on December 2, 2020.

TOWNSHIP OF FRANKLIN LAND USE BOARD

_____

_____
MARGARET HOUSMAN, SECRETARY

10

# EXHIBIT "B"

TOWNSHIP OF FRANKLIN
COUNTY OF WARREN

RESOLUTION NO. 2020-71

A RESOLUTION DETERMINING THAT THE PROPERTY IDENTIFIED AS BLOCK 58 AND LOT 1 BE DESIGNATED AS A NON-CONDEMNATION REDEVELOPMENT AREA IN ACCORDANCE WITH THE LOCAL REDEVELOPMENT AND HOUSING LAW, N.J.S.A. 40A:12A-1 ET SEQ., AND AUTHORIZING PREPARATION OF A REDEVELOPMENT PLAN

WHEREAS, the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 et seq. ("Redevelopment Law"), authorizes municipalities to determine whether certain parcels of land located therein constitute areas in need of redevelopment; and

WHEREAS, on February 4, 2019, the Township Committee ("Committee") of the Township of Franklin ("Township") adopted a Resolution authorizing and directing the Land Use Board of the Township ("Board") to conduct a preliminary investigation to determine whether certain property, identified as Block 58, Lot 1, ("Study Area"), meets the criteria set forth in the Redevelopment Law and should be designated as a Non-Condemnation Redevelopment Area, as that term is defined by the Redevelopment Law; and

WHEREAS, following the conduct of a preliminary investigation by the Board Planner, James T. Kyle, P.P., AICP, the Board on May 1, 2019, conducted a public hearing, following which it adopted a resolution recommending that the subject property be designated as a Non-Condemnation Redevelopment Area in accordance with the criteria and procedures set forth in N.J.S.A. 40A:12A-5 and 40A:12A-6; and

WHEREAS, on May 16, 2019, the Township Committee adopted a resolution memorializing the designation of the subject property as a Non-Condemnation Area In Need of Redevelopment under the Redevelopment Law; and

WHEREAS, pursuant to a Consent Order dated January 3, 2020 in the matter *Heisler et al. v. Township of Franklin*, Superior Court of New Jersey, Law Division, Warren County, Docket No. WRN-L-000167-19, the matter was remanded to the Board for new hearings in order to permit the litigants and any other interested parties to cross-examine witnesses, present testimony and any other evidence; and

**WHEREAS**, in furtherance of the Consent Order, public hearings were conducted by the Board on February 26, 2020, March 11, 2020, November 11, 2020 and November 23, 2020, with notice having been properly given pursuant to N.J.S.A. 40A:12A-6(b)(3); and

**WHEREAS**, at the conclusion of the public hearings, the Board concluded that there was sufficient credible evidence to support findings that satisfy the criteria set forth in the Redevelopment Law, particularly at N.J.S.A. 40A:12A-5c, for designating the Study Area as a Non-Condemnation Redevelopment Area and that said designation is necessary for the effective redevelopment of the area comprising the Study Area; and

**WHEREAS**, in accordance with the Redevelopment Law and as memorialized by Resolution, dated December 2, 2020, the Board recommended to the Township Committee that Block 58, Lot 1 be designated as a Non-Condemnation Redevelopment Area; and

**WHEREAS**, the Township Committee considered the Board's recommendation at its regularly scheduled public meeting on December 7, 2020; and

**WHEREAS,** Township Committee accepted the recommendation of the Land Use Board to declare the Study Area as a Non-Condemnation Redevelopment Plan; and

**WHEREAS,** in order to effectuate the Township Committee's designation of the Study Area as an Area in Need of Redevelopment, the preparation of a Redevelopment Plan and presentation to the Land Use Board and Township Committee is required.

**NOW, THEREFORE, BE IT RESOLVED** by the Township Committee of the Township of Franklin, County of Warren, State of New Jersey accepts the recommendation from the Land Use Board of the Township of Franklin and finds that Block 58, Lot 1 as shown on the official tax map of the Township of Franklin and as defined in the Preliminary Investigation Report prepared by Kyle and McManus Associates dated January 24, 2020, be and is hereby deemed to be a Non-Condemnation Redevelopment Area pursuant to the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 et seq.; and

**BE IT FURTHER RESOLVED**, that the designation of Block 58, Lot 1 as a Non-Condemnation Redevelopment Area shall not authorize the Township to exercise the power of eminent domain to acquire any property in the Study Area; and

**BE IT FURTHER RESOLVED,** that the Township hereby reserves all other authority and powers granted to it under the Redevelopment Law; and

**BE IT FURTHER RESOLVED**, that the Clerk of the Township of Franklin shall forthwith transmit a copy of the within Resolution to the Commissioner of the Department of Community Affairs for review; and

**BE IT FURTHER RESOLVED**, that within ten (10) days of the Township Committee's adoption of the within Resolution, the Clerk of the Township of Franklin shall serve notice of the Township Committee's determination and the within Resolution upon all record owners of property within the Non-Condemnation Redevelopment Area, those whose names are listed on the tax assessor's records, and upon each person who filed a written objection thereto and stated, in or upon the written submission, an address to which notice of the determination and Resolution may be sent and upon the Commission of the New Jersey Department of Community Affairs; and

**BE IT FURTHER RESOLVED,** that the firm of Kyle McManus Associates, Township Planner, working in conjunction with the Township Engineer, Special Redevelopment Counsel and the Township Attorney, is authorized and directed to prepare a Redevelopment Plan for the Study Area, including an outline for the planning, development and redevelopment of the Study Area pursuant to <u>N.J.S.A.</u> 40A:12A-7 and present same to the Land Use Board and Township Committee; and

**BE IT FURTHER RESOLVED,** that this Resolution shall take effect immediately.

The within **Resolution 2020-70** was moved by Committeeperson _____ and seconded by Committeeperson _____ and upon roll call vote was passed.

| Roll Call Vote: | Yes | No | Absent/Abstained |
|---|---|---|---|
| David Guth | | | |
| Rich Herzer | | | |
| Mike Ferri | | | |
| Michael Toretta | | | |
| Mayor Jeff DeAngelis | | | |

() Yes () No () Absent Motion Carried

ATTEST:                                TOWNSHIP COMMITTEE OF THE
                                       TOWNSHIP OF FRANKLIN


_____      _____
Denise L. Becton, RMC/CMR
Township Clerk                         Deputy Mayor



## CERTIFICATION


    I, Denise L. Becton, Clerk of the Township of Franklin, County
of Warren, State of New Jersey, hereby certify that the foregoing
Resolution is a true, complete and accurate copy of Resolution
adopted by the Township Committee of the Township of Franklin at
a meeting held on December 7, 2020.


                             _____
                             Denise L. Becton, Clerk
                             Township of Franklin


-4-

# EXHIBIT "C"

Richard L. Schneider, Esq. - Attorney ID #042631984
VOGEL, CHAIT, COLLINS and SCHNEIDER
A Professional Corporation
25 Lindsley Drive, Suite 200
Morristown, New Jersey  07960-4454
(973) 538-3800
Attorneys for Defendant Land Use Board
of the Township of Franklin

| | |
|---|---|
| TRACEY HEISLER, WILLIAM HEISLER and VIKING DEVELOPMENT COMPANY, LLC,<br><br>           Plaintiffs,<br><br>           vs.<br><br>THE TOWNSHIP OF FRANKLIN (WARREN COUNTY) and the LAND USE BOARD OF THE TOWNSHIP OF FRANKLIN,<br><br>           Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: WARREN COUNTY<br>Docket No. WRN-L-000167-19<br><br>Civil Action<br><br>**CONSENT ORDER REMANDING THE MATTER TO THE LAND USE BOARD AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF FRANKLIN** |

       This matter having been opened to the Court by Richard L. Schneider, Esq., of Vogel, Chait, Collins and Schneider, P.C., attorneys for the Defendant Land Use Board of the Township of Franklin (the "Board"), and the provisions set forth herein having been the subject of a telephone case management conference with the Court, and all parties having consented to the entry of this Order, and the Court being satisfied that the stipulations and agreements set forth herein are appropriate;

       IT IS on this _____ day of December, 2019, hereby

       ORDERED as follows:

       1.     In consideration of Plaintiffs' allegations relative to this matter that the prior Township of Franklin Land Use Board (the "Board") public hearing and the Township Committee (the "Township Committee") public proceeding may have been tainted by the participation of James Onembo and Mayor DeAngelis due to alleged conflicts of interest, said public hearing and proceeding, respectively, are hereby declared as void and set aside, and this matter is hereby remanded: a) First, to the Defendant Land Use Board of the Township of Franklin (the "Board") to enable the Board to conduct a new  hearing pursuant to N.J.S.A. 40A:12A-6 to determine whether the property that is the subject of this litigation, specifically,

that certain property located at 380 Bloomsbury Road, Bloomsbury, New Jersey that is known and designated on the Tax Maps of the Township of Franklin as Block 58, Lot 1 (the "Property") meets the criteria as set forth in N.J.S.A. 40A:12A-5 to be determined to be an area in need of redevelopment pursuant to N.J.S.A. 40A:12A-6; and b) Second, to the Defendant Township Committee for it to receive anew the Board's recommendation that the Property be determined, or not be determined, to be a redevelopment area, and then to determine whether it will adopt a resolution declaring that the Property is a redevelopment area, all pursuant to N.J.S.A. 40A:12A-6.

2.     Subject to the Board's approval of the dates, the Board hearing shall take place on February 12, 2020 at 7:30 p.m., and if the hearing is not concluded on that date, it shall be continued on February 26, 2020 at 7:30 p.m., and on other subsequent dates mutually agreed to by the parties as may be required so that all evidence may be submitted and considered by the Board. The Township Committee hearing will take place on a date subsequent to the conclusion of the Board hearings.

3.     The authorization of the Township Committee of the Township of Franklin, as set forth in Resolution 2019-34, for the Board to undertake the preliminary investigation to determine whether the Property qualifies as an area in need of redevelopment shall be deemed to apply to the new hearing to be conducted.

4.     At the new hearing before the Board, Plaintiffs may be represented by counsel, shall have the right along with members of the public to cross examine any witnesses testifying at the hearing, and shall have the right along with members of the public to introduce evidence and to call their own witnesses, including expert witnesses.

5.     The attorney for the Board shall provide the attorney for the Plaintiffs with a copy of any supplemental Preliminary Investigation Report to be considered at the February 12, 2020 hearing no later than January 24, 2019, and the attorney for the Plaintiffs shall provide the attorney for the Board with a copy of any expert report Plaintiffs intend to submit no later than February 7, 2019.

6.     Neither James Onembo nor Mayor Jeffrey DeAngelis shall sit as Board members or participate in the hearing before the Board, and Mayor DeAngelis shall not sit as a Township Committeeman or participate in any subsequent hearing to determine whether any

2

recommendation, if made by the Board, that the Property be designated an area in need of redevelopment be adopted by the Township Committee.

7.    Based upon the fact that James Onembo and Mayor DeAngelis shall not be participating in the remanded hearings and that the aforementioned public hearing and proceeding before the Board and Township Committee, respectively, are hereby declared as void and set aside, all allegations that said hearing and proceeding may have been tainted by their participation at said hearing and proceeding because of an alleged conflict are hereby dismissed with prejudice as moot.

8.    Plaintiffs acknowledge and agree that James P. Kyle and Kyle & McManus Associates may act as the Planners for the Board in connection with the upcoming public hearings, and that said participation does not constitute a conflict of interest.

9.    Given that the aforementioned public hearing and proceeding before the Board and Township Committee, respectively, are hereby declared as void and set aside, no discovery by any party shall be permitted pertaining to any alleged conflict of interest by James Onembo and Mayor DeAngelis, and those provisions of the Court's October 29, 2019 written Decision to the contrary are hereby superseded.

10.    The Court shall conduct a telephone case management conference subsequent to the above contemplated proceedings on  a date which is approximately thirty (30) days after any action by the Township Committee as a result of the determination of the Board on the remanded proceedings.  A briefing and trial schedule shall be established by the Court at the case management conference, with a trial to be based on the full record established before the Board and Township Committee on remand.  Any request by Plaintiffs to supplement the record in any manner shall be made in writing and filed at least seven (7) days prior to the case management conference, with any opposition to such request to be filed no later than three (3) days prior to the case management conference.

11.    The attorney for the Board shall serve a copy of this Consent Order as signed by the Court on the attorneys for the other parties, with said service to be made by email and regular mail.

/s/ THOMAS C. MILLER, P.J.Cv.
_____
Hon. Thomas C. Miller, P.J. Cv.

3

The undersigned hereby consent to the form and entry of this Consent Order.

HEROLD LAW, P.A.
Attorneys for Plaintiffs

By:_____
     Robert F. Simon


VOGEL, CHAIT, COLLINS AND SCHNEIDER
Attorneys for Defendant
Land Use Board of the
Township of Franklin

By:_____
     Richard L. Schneider, Esq.


BENBROOK & BENBROOK, LLC
Attorneys for Defendant
Township of Franklin

By:_____
     Kevin P. Benbrook

# EXHIBIT "D"

# ☰ SAFAVIEH

January 21, 2019

Honorable Jeff DeAngelis, Mayor
Franklin Township
2093 Route 57
Broadway
Franklin, NJ 08808

**Re: Safavieh Warehouse – 380 Bloomsbury Road, Franklin Township, NJ**
**Proposed PILOT Plan**

Dear Mayor DeAngelis:

It was a pleasure meeting with you and your staff to discuss the possibility of the development of a 1,200,000 square foot warehouse and distribution facility in your municipality (the "Project"). This letter has been prepared to provide a general proposal as to the terms which we seek in order to move forward with the project.

As we discussed Safavieh ("Safavieh") operates a number of distribution facilities in New Jersey and other states. Because of the highly competitive nature of the internet-based distribution business, it is critical that our facilities operate at cost levels that are competitive with the rest of the industry. In the case of this project, the cost of paying full real estate taxes would make this site costlier than many available alternatives. As a result, we are seeking the cooperation of the Township in the granting of a long-term tax abatement and the issuance of a redevelopment area bond so that the costs of operation of this location will be competitive with other possible sites.

As detailed in the attached exhibits, our specific request is as follows:

1. The Township shall declare the site as an "area in need of redevelopment" as such term is defined in the Redevelopment and Housing Law (N.J.S.A. 40A:12A-1 et seq.) (the "Redevelopment Law").
2. The Township shall adopt a "redevelopment plan" as such term is defined in the Redevelopment Law for the site so as to permit its redevelopment for the warehousing and distribution facility configured as we discussed in our meeting.
3. The Township shall designate the "Urban Renewal Entity", as such term is defined in the Redevelopment Law, formed by Safavieh (the "Safavieh URE") for such purpose as the designated redeveloper of the Project.
4. The Township shall authorize the execution of a "financial agreement" as such term is defined in the Long Term Tax Exemption Law (N.J.S.A. 40A:20-1 et seq.) (the "LTTEL") with the Safavieh URE (the "FA").

5. The Township shall authorize the issuance of a redevelopment area bond (the "RAB") as such term is defined in the Redevelopment Area Bond Financing Law (N.J.S.A. 40A:12-64 et seq.), with the debt service on the RAB to be paid by funds pledged for that purpose from the FA.

6. The general terms of the FA shall be as follows:

      a. The term of the abatement shall be for 30 years, commencing at the time that a temporary or permanent certificate of occupancy for the Project is issued.

      b. The annual amount of the payment in lieu of taxes ("PILOT") required by the FA shall be determined for the first year of the term by multiplying the gross square foot area of the Project by $0.50 per square foot. The PILOT shall increase each year thereafter at the annual rate of 2% per year.

7. The Safavieh URE shall also pay to the Township the Non-Residential Affordable Housing fee required by NJ state statute at the rate required by that law if required.

8. The Safavieh URE shall also pay to the Township the "rollback taxes" required by the New Jersey Farmland Assessment Law.

As seen in the attached exhibits, this proposal will result in a substantial increase in revenue for both the Township and its school districts. In the first fully stabilized year (Year 2 of the term), the Township would receive approximately $368,578, compared to the about $200 per year currently received. In that same year, the school districts would receive about $118,386, compared with the about $1400 per year currently received. Even the county would benefit, receiving over $60,000 in that same year, compared with the about $500 currently received.

These amounts would escalate annually for the entire 30 year term, so by year 10, the municipal share would exceed $442,000, by year 20 it would exceed $552,000 and by the end of the agreement, the municipal share would reach about $687,000. The school and county shares would also grow at approximately that same rate.

In so far as time is of the essence in this project, may I request your prompt reply to this proposal so we can determine how best to proceed. To the extent that we can reach agreement on this matter, I am prepared to have our professionals, to be coordinated by Tom Banker, who you met at the meeting, work directly with you to advance this Project as quickly as possible.

Thank you again for the spirit of cooperation exhibited at our meeting. I look forward to a long and successful relationship between Safavieh and Franklin Township.

Sincerely,

Brian J. DiResta
President
Safavieh Development Group LLC

Cc:  James Kyle
     Darius Yaraghi
     Thomas Banker
     Mark Peck, Esq.
     Howard L. Applebaum

# Franklin
## 1/15/2019

# 2017 Tax Data

| Description | 2017 | % of Total |
|---|---|---|
| Net Taxable Value | 414,142,708 | |
| General Tax Rate | 3.0189% | |
| Equalization Ratio | 101.4230% | |
| Total Equalized Value | 410,504,041 | |
| County Levy | 2,747,876.97 | 21.989 |
| County Library Levy | 215,484.49 | 1.314 |
| County OS Levy | 164,201.62 | 25.028 |
| Sub-Total County | 3,127,563.08 | 25.028 |
| District School Levy | 3,911,025.00 | 31.297 |
| Regional School Levy | 4,322,787.00 | 34.592 |
| Local School Levy | 0.00 | 0.000 |
| Sub-Total School | 8,233,812.00 | 65.890 |
| Municipal Levy | 1,010,759.00 | 8.088 |
| Municipal Open Space Levy | 124,243.00 | 0.994 |
| Municipal Library Levy | 0.00 | 0.000 |
| Sub-Total Municipal | 1,135,002.00 | 9.083 |
| Total Levy | 12,496,377.08 | 100.000 |
| Eq. Tax Rate (from EQ Ratio) | 3.0609% | |
| 2017 Tax Rate | | |
| 2017 Equalization Ratio | 88.86% | |

**380 Bloomsbury Road**
**1/15/2019**

**RAB Calculation**

| Proposed RAB Amount | | | |
|---|---|---|---|
| Principal | Term | Rate | Annual Payment |
| 1,000,000.00 | 30 | 0.0500 | 65,051.44 |

## 380 Bloomsbury Road

| Parameter | Value |
|---|---|
| Land Assessment | 5,500,000 |
| 2017 Tax Rate | 3.018% |
| 2017 Equalization Rate | 101.4200% |
| 2021 Proj. Tax Rate | 3.2668% |
| PV Escalation Rate | 2.0000% |
| Annual Revenue Esc. | 2.0000% |
| Gross Bldg Area (SF) | 1,200,000 |
| Annual PILOT Escalator | 2.0000% |

## PILOT Details

| Detail | Value |
|---|---|
| Prior Year Taxes | 2,148 |
| Assessed Value of Land (Year 1) | 5,500,000 |
| Proj. Assessed Value | 55,000,000 |
| Proj. Full Taxes (2021) | 1,796,729 |
| Projected Annual Tax Rate Increase | 2.0000% |
| Municipal Share of Taxes | 9.0826% |
| Initial PILOT Rate per SF | 0.50 |
| School Share of Taxes | 65.8896% |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Calendar Year | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 |
| Project Completion Indicator | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Annual Gross Revenue | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PILOT Rate | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% |
| Formula PILOT Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Prior Full Taxes | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 |
| Negotiated PILOT | 600,000 | 612,000 | 624,240 | 636,725 | 649,459 | 662,448 | 675,697 | 689,211 |
| Min. % of Full Taxes | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Projected Theoretical Taxes | 1,796,729 | 1,832,664 | 1,869,317 | 1,906,703 | 1,944,837 | 1,983,734 | 2,023,409 | 2,063,877 |
| Municipal Share (Full Tax) | 163,191 | 166,454 | 169,783 | 173,179 | 176,643 | 180,176 | 183,779 | 187,455 |
| PILOT per Statute | 600,000 | 612,000 | 624,240 | 636,725 | 649,459 | 662,448 | 675,697 | 689,211 |
| Land Taxes | 176,150 | 179,673 | 183,266 | 186,932 | 190,670 | 194,484 | 198,373 | 202,341 |
| Municipal Share (Land Tax) | 15,999 | 16,319 | 16,645 | 16,978 | 17,318 | 17,664 | 18,018 | 18,378 |
| Add'l PILOT for RAB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Gross PILOT | 600,000 | 612,000 | 624,240 | 636,725 | 649,459 | 662,448 | 675,697 | 689,211 |
| Pledged to RAB | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 |
| Net PILOT (After L/T Credit) | 534,949 | 370,799 | 379,516 | 388,407 | 397,476 | 406,727 | 416,162 | 425,787 |
| County Share (PILOT) | 26,747 | 18,540 | 18,976 | 19,420 | 19,874 | 20,336 | 20,808 | 21,289 |
| Municipal Share (PILOT) | 508,201 | 352,259 | 360,540 | 368,987 | 377,602 | 386,390 | 395,354 | 404,497 |
| Total Municipal Share | 524,200 | 368,578 | 377,185 | 385,965 | 394,920 | 404,055 | 413,372 | 422,875 |
| Diff M/Share (PILOT v Tax) | 361,010 | 202,123 | 207,402 | 212,786 | 218,278 | 223,879 | 229,593 | 235,420 |
| Total School Share | 116,064 | 118,386 | 120,753 | 123,169 | 125,632 | 128,145 | 130,707 | 133,322 |
| Total Mun. & School Share | 640,265 | 486,964 | 497,939 | 509,134 | 520,552 | 532,199 | 544,079 | 556,197 |

## 380 Bloomsbury Ro

Land Assessment
2017 Tax Rate
2017 Equalization Rate
2021 Proj. Tax Rate
PV Escalation Rate
Annual Revenue Esc.
Gross Bldg Area (SF)
Annual PILOT Escalator

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Year | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| Calendar Year | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 | 2035 |
| Project Completion Indicator | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Annual Gross Revenue | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PILOT Rate | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% |
| Formula PILOT Payment | | | | | | | | |
| Prior Full Taxes | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 |
| Negotiated PILOT | 702,996 | 717,056 | 731,397 | 746,025 | 760,945 | 776,164 | 791,687 | 807,521 |
| Min. % of Full Taxes | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Projected Theoretical Taxes | 2,105,155 | 2,147,258 | 2,190,203 | 2,234,007 | 2,278,687 | 2,324,261 | 2,370,746 | 2,418,161 |
| Municipal Share (Full Tax) | 191,204 | 195,028 | 198,928 | 202,907 | 206,965 | 211,104 | 215,327 | 219,633 |
| PILOT per Statute | 702,996 | 717,056 | 731,397 | 746,025 | 760,945 | 776,164 | 791,687 | 807,521 |
| Land Taxes | 206,388 | 210,515 | 214,726 | 219,020 | 223,401 | 227,869 | 232,426 | 237,075 |
| Municipal Share (Land Tax) | 18,745 | 19,120 | 19,503 | 19,893 | 20,291 | 20,697 | 21,110 | 21,533 |
| Add'l PILOT for RAB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Gross PILOT | 702,996 | 717,056 | 731,397 | 746,025 | 760,945 | 776,164 | 791,687 | 807,521 |
| Pledged to RAB | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 |
| Net PILOT (After LT Credit) | 435,603 | 445,616 | 455,830 | 466,247 | 476,873 | 487,712 | 498,767 | 510,043 |
| County Share (PILOT) | 21,780 | 22,281 | 22,791 | 23,312 | 23,844 | 24,386 | 24,938 | 25,502 |
| Municipal Share (PILOT) | 413,823 | 423,336 | 433,038 | 442,935 | 453,030 | 463,326 | 473,829 | 484,541 |
| Total Municipal Share | 432,569 | 442,456 | 452,541 | 462,828 | 473,320 | 484,023 | 494,939 | 506,074 |
| Diff M Share (PILOT v Tax) | 241,365 | 247,428 | 253,613 | 259,921 | 266,355 | 272,918 | 279,613 | 286,441 |
| Total School Share | 135,988 | 138,708 | 141,482 | 144,312 | 147,198 | 150,142 | 153,145 | 156,207 |
| Total Mun. & School Share | 568,557 | 581,164 | 594,023 | 607,139 | 620,518 | 634,165 | 648,084 | 662,281 |

# 380 Bloomsbury Ro

Land Assessment
2017 Tax Rate
2017 Equalization Rate
2021 Proj. Tax Rate
PV Escalation Rate
Annual Revenue Esc.
Gross Bldg Area (SF)
Annual PILOT Escalator

| | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
|---|---|---|---|---|---|---|---|---|
| Year | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| Calendar Year | 2036 | 2037 | 2038 | 2039 | 2040 | 2041 | 2042 | 2043 |
| Project Completion Indicator | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Annual Gross Revenue | | | | | | | | |
| PILOT Rate | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% |
| Formula PILOT Payment | | | | | | | | |
| Prior Full Taxes | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 |
| Negotiated PILOT | 823,671 | 840,145 | 856,948 | 874,087 | 891,568 | 909,400 | 927,588 | 946,140 |
| Min. % of Full Taxes | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Projected Theoretical Taxes | 2,466,524 | 2,515,855 | 2,566,172 | 2,617,495 | 2,669,845 | 2,723,242 | 2,777,707 | 2,833,261 |
| Municipal Share (Full Tax) | 224,026 | 228,506 | 233,076 | 237,738 | 242,493 | 247,342 | 252,289 | 257,335 |
| PILOT per Statute | 823,671 | 840,145 | 856,948 | 874,087 | 891,568 | 909,400 | 927,588 | 946,140 |
| Land Taxes | 241,816 | 246,652 | 251,585 | 256,617 | 261,750 | 266,984 | 272,324 | 277,771 |
| Municipal Share (Land Tax) | 21,963 | 22,403 | 22,851 | 23,308 | 23,774 | 24,249 | 24,734 | 25,229 |
| Add'l PILOT for RAB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Gross PILOT | 823,671 | 840,145 | 856,948 | 874,087 | 891,568 | 909,400 | 927,588 | 946,140 |
| Pledged to RAB | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 |
| Net PILOT (After L/T Credit) | 521,545 | 533,277 | 545,244 | 557,450 | 569,900 | 582,599 | 595,552 | 608,764 |
| County Share (PILOT) | 26,077 | 26,664 | 27,262 | 27,872 | 28,495 | 29,130 | 29,778 | 30,438 |
| Municipal Share (PILOT) | 495,468 | 506,613 | 517,982 | 529,577 | 541,405 | 553,469 | 565,774 | 578,326 |
| Total Municipal Share | 517,431 | 529,016 | 540,832 | 552,885 | 565,179 | 577,718 | 590,509 | 603,555 |
| Diff M/Share (PILOT v Tax) | 293,406 | 300,510 | 307,756 | 315,147 | 322,686 | 330,376 | 338,219 | 346,220 |
| Total School Share | 159,332 | 162,518 | 165,769 | 169,084 | 172,466 | 175,915 | 179,433 | 183,022 |
| Total Mun. & School Share | 676,763 | 691,534 | 766,601 | 721,969 | 737,644 | 753,633 | 769,942 | 786,577 |

## 380 Bloomsbury Ro

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| Land Assessment | | | | | | | |
| 2017 Tax Rate | | | | | | | |
| 2017 Equalization Rate | | | | | | | |
| 2021 Proj. Tax Rate | | | | | | | |
| PV Escalation Rate | | | | | | | |
| Annual Revenue Esc. | | | | | | | |
| Gross Bldg Area (SF) | | | | | | | |
| Annual PILOT Escalator | | | | | | | |
| | | | | | | | |
| **Year** | 25 | 26 | 27 | 28 | 29 | 30 | Total |
| Calendar Year | 2044 | 2045 | 2046 | 2047 | 2048 | 2049 | |
| Project Completion Indicator | 1 | 1 | 1 | 1 | 1 | 1 | |
| Annual Gross Revenue | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PILOT Rate | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | |
| Formula PILOT Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Prior Full Taxes | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 2,148 | 0 |
| Negotiated PILOT | 965,062 | 984,364 | 1,004,051 | 1,024,132 | 1,044,615 | 1,065,507 | 24,340,848 |
| Min % of Full Taxes | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | |
| Projected Theoretical Taxes | 2,889,926 | 2,947,725 | 3,006,679 | 3,066,813 | 3,128,149 | 3,190,712 | 72,889,850 |
| Municipal Share (Full Tax) | 262,482 | 267,731 | 273,086 | 278,548 | 284,119 | 289,801 | 6,620,329 |
| PILOT per Statute | 965,062 | 984,364 | 1,004,051 | 1,024,132 | 1,044,615 | 1,065,507 | 24,340,848 |
| Land Taxes | 283,326 | 288,993 | 294,772 | 300,668 | 306,681 | 312,815 | 7,146,064 |
| Municipal Share (Land Tax) | 25,734 | 26,248 | 26,773 | 27,309 | 27,855 | 28,412 | 649,052 |
| Add'l PILOT for RAB | 0 | 0 | 0 | 0 | 0 | 0 | 3,190,712 |
| Gross PILOT | 965,062 | 984,364 | 1,004,051 | 1,024,132 | 1,044,615 | 1,065,507 | 24,340,848 |
| Pledged to RAB | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 65,051 | 1,065,507 |
| Net PILOT (After LT Credit) | 622,240 | 635,986 | 650,007 | 664,308 | 678,895 | 693,774 | 15,556,056 |
| County Share (PILOT) | 31,112 | 31,799 | 32,500 | 33,215 | 33,945 | 34,689 | 777,803 |
| Municipal Share (PILOT) | 591,128 | 604,187 | 617,506 | 631,093 | 644,950 | 659,085 | 14,778,253 |
| Total Municipal Share | 616,862 | 630,435 | 644,280 | 658,401 | 672,805 | 687,497 | 15,427,305 |
| Diff MShare (PILOT v Tax) | 354,380 | 362,703 | 371,194 | 379,853 | 388,686 | 397,696 | 8,306,976 |
| Total School Share | 186,682 | 190,416 | 194,224 | 198,109 | 202,071 | 206,112 | 4,708,512 |
| Total Mun. & School Share | 803,544 | 820,851 | 836,504 | 856,510 | 874,876 | 893,610 | 20,135,817 |

# EXHIBIT "E"

# PRELIMINARY INVESTIGATION
# BLOCK 58, LOT 1

## PREPARED BY THE FRANKLIN TOWNSHIPSHIP LAND USE BOARD

## WITH ASSISTANCE FROM

KYLE + MCMANUS ASSOCIATES

2 EAST BROAD STREET, SECOND FLOOR, HOPEWELL, NJ 08525

James T. Kyle, PP, AICP

Licensed NJ Professional Planner Number 05667

The original of this document was signed and sealed

in accordance with N.J.S.A. 45:14A-12

| 4/18/2019 | Township of Franklin |

PO Box 547, 2093 Route 57, Broadway, NJ 08808

# Preliminary Investigation Block 58, Lot 1

### TOWNSHIP OF FRANKLIN

TOWNSHIP OF FRANKLIN COMMITTEE
Jeffrey DeAngelis, Mayor
Mike Toretta, Deputy Mayor
David Guth, Committeeperson
Mike Ferri, Committeeperson
Jeannene Butler, Committeeperson

TOWNSHIP OF FRANKLIN LAND USE BOARD
Henry Meltzer, Chairman, Class IV Member
Mayor Jeffrey DeAngelis, Class I Member
Mike Ferri, Class III Member
James Onembo, Class II Member
John Van Saders, Vice Chairman, Class IV Member
Sam Santini, Class IV Member
Ron Sigler, Class IV Member
Sudha Kantor, Class IV Member
Gary Corde, Class IV Member
Patrick Banes, Alternate Member #1
Margaret Housman, Secretary
James T. Kyle, PP/AICP, Township Planner
Michael S. Finelli, PE, Township Engineer
Richard L. Schneider, Esq., Land Use Board Attorney

TOWNSHIP OF FRANKLIN STAFF
Denise L. Becton, Township Clerk
Kevin P. Benbrook, Esq., Township Attorney

# TABLE OF CONTENTS

Introduction ..................................................................................................................4

Figure 1: 2017 Aerial Photograph and Parcel Studied ......................................5

Description of the Study Area.................................................................................6

Figure 2: 2017 Aerial Oblique View from 4/17/19 ............................................6

Existing Zoning ..........................................................................................................6

Figure 3: 2017 Existing Zoning...............................................................................7

Legal Basis for Redevelopment in New Jersey ..................................................8

Review of Study Area Parcels and Redevelopment Criteria.........................9

Recommendations ................................................................................................. 10

Figure 4: Recommended Asbury Road Redevelopment Area Boundaries .......................... 10

## Introduction

In accordance with the New Jersey Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-6, the governing body of the Township of Franklin, with the adoption of Resolution 2019-34 on February 4, 2019, has directed the Land Use Board to conduct a preliminary investigation to assist in determining if certain properties within Franklin could qualify as "an area in need of redevelopment". This preliminary investigation has been conducted and properties assessed under the criteria set forth in N.J.S.A. 40A:12A-5. Should <u>ANY</u> one of these conditions exist within the area studied, it is reasonable to conclude that an area is in need of redevelopment. They include:

    a.   The generality of buildings are substandard, unsafe, unsanitary, dilapidated, or obsolescent, or possess any of such characteristics, or are so lacking in light, air, or space, as to be conducive to unwholesome living or working conditions.

    b.   The discontinuance of the use of buildings previously used for commercial, manufacturing, or industrial purposes; the abandonment of such buildings; or the same being allowed to fall into so great a state of disrepair as to be untenantable.

    c.   Land that is owned by the municipality, the county, a local housing authority, redevelopment agency or redevelopment entity, or unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, and that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital.

    d.   Areas with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community.

    e.   A growing lack or total lack of proper utilization of areas caused by the condition of the title, diverse ownership of the real properties therein or other similar conditions which impede land assemblage or discourage the undertaking of improvements, resulting in a stagnant and unproductive condition of land potentially useful and valuable for contributing to and serving the public health, safety and welfare, which condition is presumed to be having a negative social or economic impact or otherwise being detrimental to the safety, health, morals, or welfare of the surrounding area or the community in general.

    f.   Areas, in excess of five contiguous acres, whereon buildings or improvements have been destroyed, consumed by fire, demolished or altered by the action of storm, fire, cyclone, tornado, earthquake or other casualty in such a way that the aggregate assessed value of the area has been materially depreciated.

    g.   In any municipality in which an enterprise zone has been designated pursuant to the "New Jersey Urban Enterprise Zones Act," P.L.1983, c.303 (C.52:27H-60 et seq.) the execution of the actions prescribed in that act for the municipality and approval by the New Jersey Urban Enterprise Zone Authority of the zone development plan for the area of the enterprise zone shall be considered sufficient for the determination that the area is in need of redevelopment pursuant to sections 5 and 6 of P.L.1992, c.79 (C.40A:12A-5 and 40A:12A-6) for the purpose of granting tax exemptions within the enterprise zone district pursuant to the provisions of P.L.1991, c.431 (C.40A:20-1 et seq.) or the adoption of a tax abatement and exemption ordinance pursuant to the provisions of P.L.1991, c.441 (C.40A:21-1 et seq.).

The municipality shall not utilize any other redevelopment powers within the urban enterprise zone unless the municipal governing body and planning board have also taken the actions and fulfilled the requirements prescribed in P.L.1992, c.79 (C.40A:12A-1 et al.) for determining that the area is in need of redevelopment or an area in need of rehabilitation and the municipal governing body has adopted a redevelopment plan ordinance including the area of the enterprise zone.

h.   The designation of the delineated area is consistent with smart growth planning principles adopted pursuant to law or regulation.

The property studied is designated as Block 58, Lot 1, consisting of approximately 112 acres located on the north side of Bloomsbury-Asbury Road immediately opposite Lime Kiln Road.  Figure 1, below, is a 2017 aerial photograph detailing the location of the parcel studied (outlined in yellow), with the block and lot designation of the studied parcel and those lots surrounding labeled for reference.

## Figure 1: 2017 Aerial Photograph and Parcel Studied



**Preliminary Investigation Area**
Township of Franklin, Warren County, NJ

Legend

Block 58, Lot 1

Municipal Boundaries

Map Scale = 1:9,600
1" = 800'

0   400   800   1,600   Feet

Map Prepared by:
James T. Kyle, PP/AICP
Township Planner
2 East Broad Street, Second Floor
Hopewell, NJ 08525
609-257-6706
jkyle@kylemcmanus.com

KMA
KYLE & McMANUS ASSOCIATES
POLICY
PLANNING
DESIGN

## Description of the Study Area

The study area consists of approximately 112 acres of land on the north side of Asbury-Bloomsbury Road, located immediately opposite Lime Kiln Road in the southwest corner of the Township. At present the parcel is actively farmed and bordered by hedgerows on all sides. A single hedgerow bisects the property in a north/south direction. The site is located within the Highlands Planning Area. Figure 2, below, is an aerial oblique photo of most of the property, acquired on April 17, 2019, taken from the south looking north.

### Figure 2: 2017 Aerial Oblique View from 4/17/19



In reviewing data available from both the New Jersey Department of Environmental Protection and the New Jersey Highlands Council, the site has no wetlands and has limited areas of critical slopes (as defined by the New Jersey Highlands Council) along its northern boundary. According to data currently available, there is a single unnamed tributary to the Musconetcong River in the southwest quadrant of the site that flows to the southwest, eventually draining to the Musconetcong River after crossing under Asbury-Bloomsbury Road.

Generally speaking, the area surrounding the study area is comprised of a mix of single family detached homes on lots ranging from 0.6 acres to 1.5 acres and farmland.

## Existing Zoning

The study area is situated within the Industrial District, which permits storage and warehousing, wholesaling, processing, light manufacturing and assembling, office, research and laboratory uses, computer and data processing centers, agricultural uses and wireless telecommunications antennas placed on existing structures. Accessory uses permitted include Off-street parking, signs, accessory apartments in accordance with § 90-56G and small wind energy systems in accordance with § 90-59.2 renewable energy facilities. Wireless

telecommunications towers are conditionally permitted in the district.  Development in the Industrial District is subject to the following area, bulk and yard requirements, as outlined in Attachment 11 of the Land Use and Development Ordinance:

| Minimum Lot Area | 130,000 s.f. |
|---|---|
| Minimum Lot Frontage and Width | 250' |
| Minimum Front Yard Setback | 75' |
| Minimum Side Yard Setback | 50' |
| Minimum Rear Yard Setback | 70' |
| Maximum Building Height | 35' (48' in one story for warehouse) |
| Maximum Building Coverage | 25% |
| Maximum Lot Coverage | 40% |
| Maximum Floor Area Ratio | 0.25 |

Figure 3, below, depicts zoning applicable to the study area as well as surrounding parcels.

**Figure 3: 2017 Existing Zoning**



## Legal Basis for Redevelopment in New Jersey

The New Jersey Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 et. seq., enables municipalities to take advantage of a broad range of tools that assist in remedying deteriorated conditions and blight or lack of proper utilization of land that ultimately impacts the public good. Areas that exhibit a preponderance of vacant or underutilized structures, or lands that have remained underutilized for a length of time can ultimately impact the viability of surrounding uses to the detriment of the public interest. And while these tools have been used exclusively and often in New Jersey's larger urban areas like Jersey City, Newark, Paterson and East Orange, they are equally effective in suburban municipalities like Franklin.

Redevelopment starts with the governing body authorizing the Planning Board (or Land Use Board in the case of Franklin) to undertake a "Preliminary Investigation" of whether a certain area or group of parcels meet the redevelopment criteria outlined in N.J.S.A. 40A:12A-5. Recent changes in the LRHL require that the governing body, in its resolution authorizing the preliminary investigation, specify whether condemnation powers will be utilized in redevelopment efforts. In the case of this investigation, the governing body has already determined condemnation powers will not be used, branding this a "non-condemnation redevelopment area". This means the Township of Franklin will not seek to condemn any privately-owned properties within the area studied for the purposes of redevelopment and will instead rely on normal market forces to drive the assemblage of land for new development.

While the LRHL does not prescribe an exact form for the preliminary investigation, it must contain, at a minimum, a map of the area studied and the location of parcels included along with a statement as to the basis for the investigation. The Land Use Board is required to hold a public hearing on the preliminary investigation, with notice given to affected property owners and general notice given by publication of the hearing in a newspaper of general circulation. Notice must be published for two consecutive weeks, the second publication occurring at least 10 days prior to the date of the hearing on the preliminary investigation. The hearing is held much like a hearing for land development applications, where interested parties and those immediately affected are afforded the opportunity to speak and enter evidence for the Board's consideration. At the conclusion of the public hearing, the Board is required to recommend to the governing body that all or any part of the area studied be determined, or not be determined, to be an area in need of redevelopment.

Considering the recommendation of the Land Use Board, the governing body may adopt a resolution determining that the area studied, or any part thereof, is an area in need of redevelopment. Once adopted, the resolution must be forwarded to the Commissioner of Community Affairs for review; under certain circumstances explicit approval is required, which must be issued by the Commissioner within 30 days. The governing body must issue a notice of determination within 10 days to all property owners within the delineated area and any person who filed a written objection and specified an address where a notice of determination must be sent.

Once an area is determined to be an area in need of redevelopment, the governing body must prepare or authorize the Land Use Board to prepare, a redevelopment plan. The LRHL specifies that "the redevelopment plan shall include an outline for the planning, development, redevelopment, or rehabilitation of the project area sufficient to indicate:"

(1)   Its relationship to definite local objectives as to appropriate land uses, density of population, and improved traffic and public transportation, public utilities, recreational and community facilities and other public improvements.

(2)    Proposed land uses and building requirements in the project area.

(3)    Adequate provision for the temporary and permanent relocation, as necessary, of residents in the project area, including an estimate of the extent to which decent, safe and sanitary dwelling units affordable to displaced residents will be available to them in the existing local housing market.

(4)    An identification of any property within the redevelopment area which is proposed to be acquired in accordance with the redevelopment plan.

(5)    Any significant relationship of the redevelopment plan to (a) the master plans of contiguous municipalities, (b) the master plan of the county in which the municipality is located, and (c) the State Development and Redevelopment Plan adopted pursuant to the "State Planning Act," P.L.1985, c.398 (C.52:18A-196 et al.).

(6)    As of the date of the adoption of the resolution finding the area to be in need of redevelopment, an inventory of all housing units affordable to low and moderate income households, as defined pursuant to section 4 of P.L.1985, c.222 (C.52:27D-304), that are to be removed as a result of implementation of the redevelopment plan, whether as a result of subsidies or market conditions, listed by affordability level, number of bedrooms, and tenure.

(7)    A plan for the provision, through new construction or substantial rehabilitation of one comparable, affordable replacement housing unit for each affordable housing unit that has been occupied at any time within the last 18 months, that is subject to affordability controls and that is identified as to be removed as a result of implementation of the redevelopment plan. Displaced residents of housing units provided under any State or federal housing subsidy program, or pursuant to the "Fair Housing Act," P.L.1985, c.222 (C.52:27D-301 et al.), provided they are deemed to be eligible, shall have first priority for those replacement units provided under the plan; provided that any such replacement unit shall not be credited against a prospective municipal obligation under the "Fair Housing Act," P.L.1985, c.222 (C.52:27D-301 et al.), if the housing unit which is removed had previously been credited toward satisfying the municipal fair share obligation.  To the extent reasonably feasible, replacement housing shall be provided within or in close proximity to the redevelopment area.  A municipality shall report annually to the Department of Community Affairs on its progress in implementing the plan for provision of comparable, affordable replacement housing required pursuant to this section.

Any redevelopment plan may include requirements for the provision of affordable housing, but it must contain discussion on the relationship of the plan to development regulations of the municipality and must be "substantially consistent with" or "designed to effectuate" the municipal master plan.  Redevelopment plans are required to be adopted by ordinance, and go through the normal procedure undertaken by the governing body for such an action.  The only difference in this case is referral of the redevelopment plan to the Land Use Board for review in the context of the master plan.  In accordance with the LRHL, if the Land Use Board prepares the redevelopment plan, as will likely be the case here, the governing body need not refer the plan and ordinance back to the Land Use Board for review.

## Review of Study Area Parcels and Redevelopment Criteria

What follows is an assessment of the study area and identification of criteria found in N.J.S.A. 40A:12A-5 that are met.  The redevelopment criteria considered for the studied parcels include:

c.    Land that is owned by the municipality, the county, a local housing authority, redevelopment agency or redevelopment entity, or unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, and that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital.

Block 58, Lot 1 is a parcel that has remained vacant for a period of at least 10 years prior to the preparation of this report. Located in the extreme southeast corner of the Township, the parcel's location relative to developed portions of the municipality and isolated location means it is not likely to develop without intervention on the part of the Township and incentives available through the redevelopment process. Some form of industrial zoning has existed in this area of the Township for at least the last 20 years, and yet this parcel and others have remained undeveloped. The Township's 2001 Land Use Plan notes the industrial zone is a long-standing component of the Township's nonresidential land use planning.

## Recommendations

Based on analysis contained in this preliminary investigation, the Land Use Board finds that one or more of the criteria for designation as an area in need of redevelopment contained in the Local Redevelopment and Housing Law (N.J.S.A. 40A:12A-5) are met for the area studied, particularly criteria C.

Figure 4, below, shows the recommended boundaries of what is proposed to be called the "Asbury Road Redevelopment Area".

## Figure 4: Recommended Asbury Road Redevelopment Area Boundaries



**Recommended Boundaries - Asbury Road Redevelopment Area**
Township of Franklin, Warren County, NJ

Legend



Block 58, Lot 1

Municipal Boundaries

Map Scale = 1:9,600
1"=800'



0    400    800    1,600    Feet

Map Prepared by:
James T. Kyle, PP/AICP
Township Planner
2 East Broad Street, Second Floor
Hopewell, NJ 08525
609-257-6706
jkyle@kylemcmanus.com



KMA
KYLE+McMANUS ASSOCIATES
POLICY
PLANNING
DESIGN



**EXHIBIT "F"**

RESOLUTION OF THE LAND USE BOARD OF THE TOWNSHIP OF FRANKLIN IN THE COUNTY OF WARREN, NEW JERSEY RECOMMENDING THAT A CERTAIN PROPERTY LOCATED ON BLOOMSBURY-ASBURY ROAD AND DESIGNATED AS BLOCK 58, LOT 1 ON THE TOWNSHIP OF FRANKLIN TAX MAPS BE DESIGNATED AS A NON-CONDEMNATION AREA IN NEED OF REDEVELOPMENT

**WHEREAS,** the Local Redevelopment and Housing Law, *N.J.S.A.* 40A:12A-1 *et seq.*, (the "Redevelopment Law") authorizes municipalities to determine whether certain parcels of land within the municipality constitute an "area in need of redevelopment", as defined in the Redevelopment Law; and

**WHEREAS,** the Township directed the Land Use Board by resolution to examine whether certain property identified as Block 58, Lot 1 (the "Study Area") on the tax map of the Township, should be determined a non-condemnation area in need of redevelopment pursuant to the Redevelopment Law; and

**WHEREAS,** James T. Kyle, P.P., of Kyle + McManus (the "Planning Consultant") prepared a preliminary investigation report of the above-referenced Study Area in accordance with the Redevelopment Law, entitled "Preliminary Investigation, Block 58, Lot 1" (the "Study"); and

**WHEREAS,** the Study concluded that the Study Area qualifies as a non-condemnation area in need of redevelopment pursuant to the Redevelopment Law, for the reasons set forth in the Study; and

**WHEREAS,** pursuant to the Redevelopment Law, the Land Use Board caused a duly noticed public hearing to be held concerning the Study on May 1, 2019, giving all persons who are interested in or would be affected by a determination that the Study Area is a non-condemnation area in need of redevelopment the opportunity to be heard; and

**WHEREAS,** at said public hearing, the Land Use Board considered the Study, heard the comments of the Planning Consultant, opened the meeting for public comment, and deliberated on the matter using the criteria set forth in the Redevelopment Law; and

**WHEREAS,** after careful consideration of all evidence presented and all testimony offered,

**NOW, THEREFORE, BE IT RESOLVED BY THE LAND USE BOARD OF THE TOWNSHIP OF FRANKLIN AS FOLLOWS:**

**Section 1.** <u>Transmission to the Township Committee</u>. The Study, and the findings of fact and conclusions contained therein, is hereby incorporated herein by reference in its entirety. The Land Use Board Secretary is hereby directed to transmit a copy of the Study and of this Resolution to the Township Committee.

2

**Section 2.**    <u>Recommendation – Area in Need of Redevelopment</u>. After consideration of all evidence presented and all testimony offered, the Land Use Board accepts and adopts the recommendation contained in the Study, and hereby recommends that the Study Area be declared a non-condemnation area in need of redevelopment in accordance with the Redevelopment Law, for the reasons set forth in the Study.

**Section 3.**    <u>Effective Date</u>. This Resolution shall take effect immediately.

We hereby certify this to be a true and complete copy of a Resolution adopted by the Land Use Board of the Township of Franklin on the 1st day of May, 2019.

Board Chair                                          MARGARET HOUSMAN
                                                    Board Secretary

2

# EXHIBIT "G"

**RESOLUTION 2019-48**

**RESOLUTION DESIGNATING BLOCK 58, LOT 1 ON THE TOWNSHIP OF FRANKLIN TAX MAP AS AN AREA IN NEED OF REDEVELOPMENT**

**WHEREAS,** on February 4, 2019, the Township Committee of the Township of Franklin adopted Resolution 2019-34 directing the Land Use Board of the Township of Franklin to undertake the preliminary investigation, pursuant to the New Jersey Local Redevelopment and Housing Law, <u>N.J.S.A.</u> 40A:12A-1 <u>et seq.</u>, to determine whether property designated as Lot 1 in Block 58 was a "non-condemnation area in need of redevelopment"; and

**WHEREAS,** the Board authorized its professional Planner, James T. Kyle, P.P., to prepare a preliminary investigation report which said report is dated April 18, 2019; and

**WHEREAS,** the Board properly published and served notice of a public hearing as to whether the subject property should be deemed a non-condemnation area in need of redevelopment, which said public hearing was held May 1, 2019; and

**WHEREAS,** at said public hearing, the Board reviewed the report prepared by Planner Kyle, accepted said report in evidence, heard testimony from Planner Kyle, and allowed members of the public to address questions to the Board's Planner and the Board and to present their own testimony; and

**WHEREAS,** consistent with the reports and testimony of the Board's professional Planner, the Board did determine at the conclusion of the public hearing that there is sufficient evidence to support the findings that the subject property satisfies the criteria set forth in Subsection c of <u>N.J.S.A.</u> 40A:12A-5, and adopted a Resolution recommending that the Township Committee designate the subject property as a non-condemnation area in need of redevelopment.

**NOW, THEREFORE BE IT RESOLVED**, by the Township Committee of the Township of Franklin, as follows:

1.      The Township Committee hereby agrees with, adopts and incorporates herein by reference, the findings of fact and conclusions of law of the Board set forth in its Resolution dated May 1, 2019 regarding Lot 1, Block 58.

2.      The Township Committee, in furtherance of the recommendation of the Board, hereby designates Lot 1 in Block 58 in the Township of Franklin as a non-condemnation area in need of redevelopment and this property is accordingly a Redevelopment Area.

3.      The Township of Franklin shall not use the power of eminent domain in connection with any future redevelopment of the subject property, and any redevelopment plan prepared and adopted shall so provide;

4.      The Township Committee hereby authorizes, pursuant to N.J.S.A. 40A:12A-7 the Township's professionals to prepare a redevelopment plan for the subject property and present the same to the Township Committee, said plan to conform with all of the requirements set forth in said statute. A subcommittee of the Township Committee may be designated to work with the Township's professionals, in furtherance of the preparation of the redevelopment plan.

5.      This Resolution shall be transmitted to the Land Use Board of the Township of Franklin, and shall take effect immediately.

6.      This Resolution shall be transmitted by the Township Clerk to the Commissioner of the Department of Community Affairs, pursuant to N.J.S.A. 40A:12A-6b(5)(c).

On motion by David Guth and seconded by Jeannene Butler the aforenoted **Resolution 2019-48** be adopted as read.

| Roll Call Vote | Yes | No | Absent/Abstained |
|---|---|---|---|
| Mike Ferri | X | | |
| David Guth | X | | |
| Michael Toretta | X | | |
| Jeannene Butler | X | | |
| Mayor Jeffrey DeAngelis | X | (5) Yes  (0) No  (0) Absent | Motion carried |

**CERTIFICATION**

I, Denise L. Becton, Municipal Clerk of the Township of Franklin, do hereby certify the foregoing to be a true copy of a Resolution adopted by the Franklin Township Committee at a meeting held on May 6, 2019.

_____

Denise L. Becton RMC/CMR

Dated:

# EXHIBIT "H"

# PRELIMINARY INVESTIGATION BLOCK 58, LOT 1

PREPARED BY THE FRANKLIN TOWNSHIP LAND USE BOARD

WITH ASSISTANCE FROM

KYLE + MCMANUS ASSOCIATES

2 EAST BROAD STREET, SECOND FLOOR, HOPEWELL, NJ 08525

James T. Kyle, PP, AICP

Licensed NJ Professional Planner Number 05667

The original of this document was signed and sealed

in accordance with N.J.S.A. 45:14A-12

| 1/24/2020 | Township of Franklin |
| --- | --- |

PO Box 547, 2093 Route 57, Broadway, NJ 08808

# Preliminary Investigation Block 58, Lot 1

### TOWNSHIP OF FRANKLIN

**TOWNSHIP OF FRANKLIN COMMITTEE**
Jeffrey DeAngelis, Mayor
Mike Toretta, Deputy Mayor
David Guth, Committeeperson
Mike Ferri, Committeeperson
Jeannene Butler, Committeeperson

**TOWNSHIP OF FRANKLIN LAND USE BOARD**
Henry Meltzer, Chairman, Class IV Member
Mayor Jeffrey DeAngelis, Class I Member
Mike Ferri, Class III Member
James Onembo, Class II Member
John Van Saders, Vice Chairman, Class IV Member
Sam Santini, Class IV Member
Donald Butler, Class IV Member
Chris Hamler, Class IV Member
Gary Corde, Class IV Member
Patrick Banes, Alternate Member #1
Margaret Housman, Secretary
James T. Kyle, PP/AICP, Township Planner
Michael S. Finelli, PE, Township Engineer
Richard L. Schneider, Esq., Land Use Board Attorney

**TOWNSHIP OF FRANKLIN STAFF**
Denise L. Becton, Township Clerk
Kevin P. Benbrook, Esq., Township Attorney

# TABLE OF CONTENTS

Introduction ................................................................................................................................4

Figure 1: 2017 Aerial Photograph and Preliminary Investigation Area.................................6

Description of the Study Area....................................................................................................6

Figure 2: 2017 Aerial Oblique View from 1/23/2020.............................................................7

Existing Zoning ..........................................................................................................................8

Figure 3: 2017 Existing Zoning..................................................................................................9

Legal Basis for Redevelopment in New Jersey ......................................................................9

Review of Study Area Parcels and Redevelopment Criteria................................................ 11

Recommendations ................................................................................................................... 13

Figure 4: Recommended Asbury Road Redevelopment Area Boundaries ........................ 14

## Introduction

This report has been prepared to assist the Franklin Township Land Use Board in assessing whether certain property within the Township meets the criteria for designation as an "area in need of redevelopment" under the provisions of the New Jersey Local Redevelopment and Housing Law.  It is being submitted to the Land Use Board in accordance with a Consent Order for Remand entered by the Superior Court of New Jersey on January 3, 2020 in the matter captioned Heisler et al. v. Franklin Township et al.

As per the requirements of the New Jersey Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-6, the governing body of the Township of Franklin, with the adoption of Resolution 2019-34 on February 4, 2019, has directed the Land Use Board to conduct a preliminary investigation to assist in determining if certain properties within Franklin could qualify as "an area in need of redevelopment".  This preliminary investigation has been conducted and properties assessed under the criteria set forth in N.J.S.A. 40A:12A-5.  Should ANY one of these conditions exist within the area studied, it is reasonable to conclude that an area is in need of redevelopment.  They include:

    a.   The generality of buildings are substandard, unsafe, unsanitary, dilapidated, or obsolescent, or possess any of such characteristics, or are so lacking in light, air, or space, as to be conducive to unwholesome living or working conditions.

    b.   The discontinuance of the use of a building or buildings previously used for commercial, retail, shopping malls or plazas, office parks, manufacturing, or industrial purposes; the abandonment of such building or buildings; significant vacancies of such building or buildings for at least two consecutive years; or the same being allowed to fall into so great a state of disrepair as to be untenantable.

    c.   Land that is owned by the municipality, the county, a local housing authority, redevelopment agency or redevelopment entity, or unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, and that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital.

    d.   Areas with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community.

    e.   A growing lack or total lack of proper utilization of areas caused by the condition of the title, diverse ownership of the real properties therein or other similar conditions which impede land assemblage or discourage the undertaking of improvements, resulting in a stagnant and unproductive condition of land potentially useful and valuable for contributing to and serving the public health, safety and welfare, which condition is presumed to be having a negative social or economic impact or otherwise being detrimental to the safety, health, morals, or welfare of the surrounding area or the community in general.

    f.   Areas, in excess of five contiguous acres, whereon buildings or improvements have been destroyed, consumed by fire, demolished or altered by the action of storm, fire, cyclone,

tornado, earthquake or other casualty in such a way that the aggregate assessed value of the area has been materially depreciated.

    g.  In any municipality in which an enterprise zone has been designated pursuant to the "New Jersey Urban Enterprise Zones Act," P.L.1983, c.303 (C.52:27H-60 et seq.) the execution of the actions prescribed in that act for the adoption by the municipality and approval by the New Jersey Urban Enterprise Zone Authority of the zone development plan for the area of the enterprise zone shall be considered sufficient for the determination that the area is in need of redevelopment pursuant to sections 5 and 6 of P.L.1992, c.79 (C.40A:12A-5 and 40A :12A-6) for the purpose of granting tax exemptions within the enterprise zone district pursuant to the provisions of P.L.1991, c.431 (C.40A:20-1 et seq.) or the adoption of a tax abatement and exemption ordinance pursuant to the provisions of P.L.1991, c.441 (C.40A:21-1 et seq.). The municipality shall not utilize any other redevelopment powers within the urban enterprise zone unless the municipal governing body and planning board have also taken the actions and fulfilled the requirements prescribed in P.L.1992, c.79 (C.40A:12A-1 et al.) for determining that the area is in need of redevelopment or an area in need of rehabilitation and the municipal governing body has adopted a redevelopment plan ordinance including the area of the enterprise zone.

    h.  The designation of the delineated area is consistent with smart growth planning principles adopted pursuant to law or regulation.

The property studied is designated as Block 58, Lot 1, consisting of approximately 112 acres located on the north side of Bloomsbury-Asbury Road immediately opposite Lime Kiln Road.  Figure 1, on the following page, is a 2017 aerial photograph detailing the location of the parcel studied (outlined in yellow), with the block and lot designation of the studied parcel and those lots surrounding labeled for reference.

## Figure 1: 2017 Aerial Photograph and Preliminary Investigation Area



**Preliminary Investigation Area**
Township of Franklin, Warren County, NJ

Legend
Preliminary Investigation Area
Municipal Boundaries

Map Scale = 1:9,600
1"=800'

0    400    800    1,600    Feet

Map Prepared by:
James T. Kyle, PP/AICP
Township Planner
2 East Broad Street, Second Floor
Hopewell, NJ 08525
609-257-6706
jkyle@kylemcmanus.com
Data Sources:  NJDEP Bureau of GIS, NJOIT

KMA
KYLE MCMANUS ASSOCIATES

this (map/publication/report) was developed using NJDEP Bureau of GIS digital data,
but this is not a NJDEP product nor does it been verified by NJDEP and is not state authorized.

## Description of the Study Area

The study area consists of approximately 112 acres of land on the north side of Asbury-Bloomsbury Road, located immediately opposite Lime Kiln Road in the southwest corner of the Township.  At present the parcel is actively farmed and bordered by hedgerows on all sides.  A single hedgerow bisects the property in a north/south direction.  The site is located within the Highlands Planning Area.  Figure 2, on the following page, is an aerial oblique photo of the property, acquired on January 23, 2020, taken from the south looking north.  The approximate boundary of the property is outlined in yellow.

## Figure 2: 2017 Aerial Oblique View from 1/23/2020



In reviewing data available from both the New Jersey Department of Environmental Protection and the New Jersey Highlands Council, the site has no wetlands and has limited areas of critical slopes (as defined by the New Jersey Highlands Council) along its northern boundary.  There are isolated areas of constrained slopes in the central western portion of the site and stretching along the western boundary, covering just over one-third of the parcel edge.   While the site is not characterized by an abundance of constrained slopes, it exhibits a wide range of elevation, with the northeastern most corner of the property at an elevation of approximately 506 feet above sea level and the southwestern most corner at an elevation of approximately 304 feet above sea level.  This change represents a drop of 202 feet across a distance of 4,170 feet, or a 4.8% grade.  It should be noted the northern half of the property exhibits a roughly 9% grade.

According to data currently available from the New Jersey Department of Environmental Protection, there is a single unnamed tributary to the Musconetcong River in the southwest quadrant of the site that flows to the southwest, eventually draining to the Musconetcong River after crossing under Asbury-Bloomsbury Road.

Generally speaking, the area surrounding the study area is comprised of a mix of single family detached homes on lots ranging from 0.6 acres to 1.5 acres and farm and woodland parcels ranging from as little as 29 acres to greater than 250 acres.  The latter form the majority of surrounding uses, and small-lot single family homes are sparse.

The tax record for Block 58, Lot 1, which is the study area, shows that taxes for 2019 were $2,191.37 for 111.52 acres.  The land value is $72,900 and the property is classified as 3B, farm qualified.

## Existing Zoning

The study area is situated within the Industrial District, which permits storage and warehousing, wholesaling, processing, light manufacturing and assembling, office, research and laboratory uses, computer and data processing centers, agricultural uses and wireless telecommunications antennas placed on existing structures. Accessory uses permitted include Off-street parking, signs, accessory apartments in accordance with § 90-56G and small wind energy systems in accordance with § 90-59.2 renewable energy facilities. Wireless telecommunications towers are conditionally permitted in the district. Development in the Industrial District is subject to the following area, bulk and yard requirements, as outlined in Attachment 11 of the Land Use and Development Ordinance:

| | |
|---|---|
| **Minimum Lot Area** | 130,000 s.f. |
| **Minimum Lot Frontage and Width** | 250' |
| **Minimum Front Yard Setback** | 75' |
| **Minimum Side Yard Setback** | 50' |
| **Minimum Rear Yard Setback** | 70' |
| **Maximum Building Height** | 35' (48' in one story for warehouse) |
| **Maximum Building Coverage** | 25% |
| **Maximum Lot Coverage** | 40% |
| **Maximum Floor Area Ratio** | 0.25 |

Some form of industrial zoning has existed for the study area since at least 1992, and review of the June 1991 Land Use Plan map prepared by Banisch Associates shows the property designated as IP Industrial Park. Properties immediately to the west have been zoned industrial since February of 1979, confirmed by review of the zoning map from that time. The uses proposed to be permitted at the time of the 1991 Land Use Plan included assembling, processing and light manufacturing, wholesaling and warehousing, office, research and laboratory uses and agricultural uses. The August 1992 zoning map, prepared by Banisch Associates, implemented the recommendation in the 1991 Land Use Plan and included the study area in the IP Industrial Park district. That was over 27 years ago. Based on recommendation in a reexamination report prepared by the Land Use Board and adopted on April 16, 2014 the zone designation of the parcel was changed to I Industrial.

Figure 3, on the following page, depicts zoning currently applicable to the study area as well as surrounding parcels.

Preliminary Investigation Block 58, Lot 1

Figure 3:
2017
Existing
Zoning



**Zoning in the Preliminary Investigation Area**
Township of Franklin, Warren County, NJ

## Legal Basis for Redevelopment in New Jersey

The New Jersey Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 et. seq., enables municipalities to take advantage of a broad range of tools that assist in remedying deteriorated conditions and blight or lack of proper utilization of land that ultimately impacts the public good.  Areas that exhibit a preponderance of vacant or underutilized structures, or lands that have remained underutilized for a length of time can ultimately impact the viability of surrounding uses to the detriment of the public interest. And while these tools have been used exclusively and often in New Jersey's larger urban areas like Jersey City, Newark, Paterson and East Orange, they are equally effective in municipalities like Franklin.

Redevelopment starts with the governing body authorizing the Planning Board (or Land Use Board in the case of Franklin) to undertake a "Preliminary Investigation" of whether a certain area or group of parcels meet the redevelopment criteria outlined in N.J.S.A. 40A:12A-5.  Recent changes in the LRHL require that the governing body, in its resolution authorizing the preliminary investigation, specify whether condemnation powers will be utilized in redevelopment efforts.  In the case of this investigation, the governing body has already determined condemnation powers will not be used, branding this a "non-condemnation redevelopment area".  This means the Township of Franklin will not seek to condemn any privately-owned properties within the area studied for the purposes of redevelopment and will instead rely on normal market forces to drive the assemblage of land for new development.

While the LRHL does not prescribe an exact form for the preliminary investigation, it must contain, at a minimum, a map of the area studied and the location of parcels included along with a statement as to the

basis for the investigation.  The Land Use Board is required to hold a public hearing on the preliminary investigation, with notice given to affected property owners and general notice given by publication of the hearing in a newspaper of general circulation.  Notice must be published for two consecutive weeks, the second publication occurring at least 10 days prior to the date of the hearing on the preliminary investigation.  The hearing is held much like a hearing for land development applications, where interested parties and those immediately affected are afforded the opportunity to speak and enter evidence for the Board's consideration.  At the conclusion of the public hearing, the Board is required to recommend to the governing body that all or any part of the area studied be determined, or not be determined, to be an area in need of redevelopment.

Considering the recommendation of the Land Use Board, the governing body may adopt a resolution determining that the area studied, or any part thereof, is an area in need of redevelopment.  Once adopted, the resolution must be forwarded to the Commissioner of Community Affairs for review; under certain circumstances explicit approval is required, which must be issued by the Commissioner within 30 days.  The governing body must issue a notice of determination within 10 days to all property owners within the delineated area and any person who filed a written objection and specified an address where a notice of determination must be sent.

Once an area is determined to be an area in need of redevelopment, the governing body must prepare or authorize the Land Use Board to prepare, a redevelopment plan.  The LRHL specifies that "the redevelopment plan shall include an outline for the planning, development, redevelopment, or rehabilitation of the project area sufficient to indicate:"

(1)    Its relationship to definite local objectives as to appropriate land uses, density of population, and improved traffic and public transportation, public utilities, recreational and community facilities and other public improvements.

(2)    Proposed land uses and building requirements in the project area.

(3)    Adequate provision for the temporary and permanent relocation, as necessary, of residents in the project area, including an estimate of the extent to which decent, safe and sanitary dwelling units affordable to displaced residents will be available to them in the existing local housing market.

(4)    An identification of any property within the redevelopment area which is proposed to be acquired in accordance with the redevelopment plan.

(5)    Any significant relationship of the redevelopment plan to (a) the master plans of contiguous municipalities, (b) the master plan of the county in which the municipality is located, and (c) the State Development and Redevelopment Plan adopted pursuant to the "State Planning Act," P.L.1985, c.398 (C.52:18A-196 et al.).

(6)    As of the date of the adoption of the resolution finding the area to be in need of redevelopment, an inventory of all housing units affordable to low and moderate income households, as defined pursuant to section 4 of P.L.1985, c.222 (C.52:27D-304), that are to be removed as a result of implementation of the redevelopment plan, whether as a result of subsidies or market conditions, listed by affordability level, number of bedrooms, and tenure.

(7)    A plan for the provision, through new construction or substantial rehabilitation of one comparable, affordable replacement housing unit for each affordable housing unit that has been occupied at any time within the last 18 months, that is subject to affordability controls and that is identified as to be removed as a result of implementation of the redevelopment plan.  Displaced residents of housing units provided under any State or federal housing subsidy program, or pursuant to the "Fair Housing Act," P.L.1985, c.222 (C.52:27D-301 et al.), provided they are deemed to be eligible, shall have first priority for those replacement units provided under the plan; provided that any such replacement unit shall not be credited against a prospective municipal obligation under the "Fair

Housing Act," P.L.1985, c.222 (C.52:27D-301 et al.), if the housing unit which is removed had previously been credited toward satisfying the municipal fair share obligation. To the extent reasonably feasible, replacement housing shall be provided within or in close proximity to the redevelopment area. A municipality shall report annually to the Department of Community Affairs on its progress in implementing the plan for provision of comparable, affordable replacement housing required pursuant to this section.

Any redevelopment plan _may_ include requirements for the provision of affordable housing, but it _must_ contain discussion on the relationship of the plan to development regulations of the municipality and _must_ be "substantially consistent with" or "designed to effectuate" the municipal master plan. Redevelopment plans are required to be adopted by ordinance and go through the normal procedure undertaken by the governing body for such an action. The only difference in this case is referral of the redevelopment plan to the Land Use Board for review in the context of the master plan. In accordance with the LRHL, if the Land Use Board prepares the redevelopment plan, as will likely be the case here, the governing body need not refer the plan and ordinance back to the Land Use Board for review.

## Review of Study Area Parcels and Redevelopment Criteria

What follows is an assessment of the study area and identification of criteria found in N.J.S.A. 40A:12A-5 that are met. The redevelopment criteria considered for the studied parcels include:

c. Land that is owned by the municipality, the county, a local housing authority, redevelopment agency or redevelopment entity, or unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, and that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital.

An important part of applying the above criteria is understanding the terms utilized. Portions of Criteria C above that are critical to its application in this case are "unimproved" and "vacant". It is worthwhile to note that neither term is defined in the Local Redevelopment and Housing Law or the New Jersey Municipal Land Use Law. In the absence of statutory guidance, many planners turn to The Complete Illustrated Book of Development Definitions, 4th Edition, written by Harvey S. Moskowitz, Carl G. Lindbloom, David Listokin, Richard Preiss and Dwight H. Merriam, published in 2015. The definitions for both "unimproved" and "vacant" as written in that book are shown below, along with the definition of "improvement".

VACANT LAND[1] - (1) Land that is undeveloped and unused; (2) any nonresidential areas with significant amounts of land not covered by nonstructural, impervious surfaces; (3) land suitable for redevelopment.

UNIMPROVED LAND[1] - Land without any improvement.

IMPROVEMENT[1] - Any permanent structure that becomes part of, is placed upon, or is affixed to real estate.

---

[1] Moskowitz, H. S., Lindbloom, C. G., Listokin, D., Preiss, R., Merriam, D. (20170705). The Complete Illustrated Book of Development Definitions, 4th Edition [VitalSource Bookshelf version]. Retrieved from vbk://9781351484626

Block 58, Lot 1 is a parcel that has remained vacant for a period of at least 10 years prior to the preparation of this report. While the current use of the lot is agriculture and it has been actively farmed since at least 1930 (confirmed by historical aerial photos), there are no permanent structures on the property. The lack of structures was confirmed by physical inspection in April of 2019 and again on January 23, 2020. Further, the property contains only a gravel/dirt driveway that provides access to the portions of the site that are farmed. This driveway is shared with an adjacent single family home on Lot 1.04, and site inspection conducted on January 23, 2020 revealed the stone portion of the access driveway extends no more than 50' into the parcel (see photo 1 above right), essentially ending where cultivation of the property commences. As shown in photo 2 at left, there is no improved access to the north of the shared access drive along the western border of the study area.


Photo 1 – Shared driveway access from Bloomsbury Road.


Photo 2 – View along western property line north of shared driveway.

Based on the extremely limited nature of the access improvements and impervious surfaces (1,160 square feet or 0.02% of the property area), and the absence of any structures, the site can be considered both unimproved and vacant. This is an important consideration under Criteria C, as the words "unimproved vacant land" are prominent. The fact that the study area has been devoted to agricultural use does not mean the property does not qualify as unimproved vacant land under the Statute.

The study area is located in the extreme southwest corner of the Township, away from what can be considered the developed portions of Franklin. Reviewing the character of the Township, most commercial development is located along Route 57, which runs east/west across the northern third of Franklin and is accessed by driving 6.5 miles east and north from the study area. There are other pockets of small-scale nonresidential development in Asbury (3.1 miles east), New Village and Broadway, the Township's historic hamlets. Other nonresidential uses exist along Edison Road and Good Springs Road, in the central part of the municipality. New nonresidential approvals and development in the Township has been limited, consisting largely of renewable energy facilities, agricultural buildings and small retail. Residential

development traditionally occurred within the hamlets mentioned above and in subdivisions that were built primarily in the 1990's to early 2000's.  In reviewing residential building permit data available from the New Jersey Department of Labor and Workforce Development, the last significant period of residential development in Franklin was 2000-2002, where 57, 56 and 25 building permits were issued.  Starting in 2003 until 2019, only 17 building permits were issued authorizing new residential housing units.  Residential development near the study area consists of small lots fronting on Bloomsbury Road; the majority of surrounding lots are of considerable size, some as large as 250 acres.  In assessing the study area, it can be said that it is located well away from developed portions of the municipality, and it is isolated from most other development in the Township.  The study area further satisfies Criteria C in that it lacks means of access to developed portions of the municipality, and is remote, with little significant development around it.

When the industrial zoning was first contemplated for the study area, the master plan included discussion about the location of this portion of the Township adjacent to Route 78.  At that time, location was seen as an advantage to attracting development to this portion of Franklin.  Yet almost 28 years later the study area and other parcels zoned for industrial use (some since 1979) have not been developed.  It is therefore clear that by virtue of the study area's location and its infrastructure limitations in a rural environment, it is not likely to be developed by private capital alone.  Redevelopment designation is thus necessary and appropriate to encourage development of the property with uses for which it was zoned.

## Recommendations

Based on analysis contained in this preliminary investigation, the Land Use Board finds that one or more of the criteria for designation as an area in need of redevelopment contained in the Local Redevelopment and Housing Law (N.J.S.A. 40A:12A-5) are met for the area studied, particularly criteria C.  Based on physical inspection, the property is both vacant and unimproved and located well away from the developed portions of the Township.  Its location is challenging despite reasonable access to Route 78 to the south.  Having languished for approximately 28 years with industrial zoning, the study area is not likely to develop through the instrumentality of private capital.

Figure 4, on the following page, shows the recommended boundaries of what is proposed to be called the "Asbury Road Redevelopment Area".

## Figure 4: Recommended Asbury Road Redevelopment Area Boundaries



### Recommended Boundaries - Asbury Road Redevelopment Area

Township of Franklin, Warren County, NJ

Legend

| Block 58, Lot 1 |
| Municipal Boundaries |



Map Scale = 1:9,600
1"=800'

Map Prepared by:
James T. Kyle, PP/AICP
Township Planner
2 East Broad Street, Second Floor
Hopewell, NJ 08525
609-257-6706
jkyle@kylemcmanus.com



KMA
KYLE+MCMANUS ASSOCIATES
POLICY
PLANNING
DESIGN

# EXHIBIT "I"

# ≡ SAFAVIEH

October 19, 2020

Hon. Jeff DeAngelis, Mayor
Franklin Township
2093 Route 57
P.O. Box 547
Broadway, New Jersey 08808

**Re:     Area in Need of Redevelopment Hearing**
**B. 58, L. 1 (380 Bloomsbury Road)**

Dear Mayor DeAngelis:

I am writing in advance of the scheduled October 28, 2020 continued "area in need" hearing, and to remind you of how imperative it is that the hearing be concluded on this date.

Our engagement with the subject property began prior to January 2019, when I first met with the Township to discuss our interest in this property and the means by which the same could be developed after decades of inutility, and on January 21, 2019 I formally requested that the Township consider a PILOT for the property. In March of 2019 we met at our Clinton Township warehouse, and thereafter with Township professionals regarding our interest in the property. Following these meetings, the Township requested that the Land Use Board conduct a study into whether the subject property was an area in need of redevelopment. This study was conducted, and the Board determined that the property was in fact an area in need of redevelopment, and the Township so designated. This action was challenged by objectors, during which the Township and objectors agreed to remand to proceedings back to the area in need study phase. This remanded hearing began February 26, 2020, was continued on March 11, 2020; the COVID pandemic unprecedented events halted (7) months further proceedings.

In consideration of the foregoing we have performed every task and met every obligation put before us. Since January 2019 we have committed $935,000 toward land purchase and spent another $473,623 in soft costs relating to this project. There is a final deadline of November 2, 2020, at which time the contract will terminate with no refunds to be given. We have expended a great deal of time and a great deal of money in furtherance of this project and appear to be no further along in the process than at the beginning. We are very hesitant to commit more resources to this project – estimated to bring the Township over $600,000 in tax revenues each year (as contrasted with the $2,000/year it currently produces) – without firm evidence that the same is moving forward and can be brought to fruition.

Accordingly, I again emphasize the importance of there being a vote on the area in need designation on October 28, so we may proceed with some assurance. We look forward to a long and productive relationship with the Township, and a vote on October 28 will help bring this to a reality. Thank you for your continued courtesy regarding this matter.

Sincerely,

Brian DiResta
President
Safavieh Development Group LLC

Cc: Kevin Benbrook, Esq.
Richard Schneider, Esq.
Mark Peck, Esq.
Steven A. Weisfeld, Esq.
Darius Yaraghi
Mitchell Berlant
Robert Berlant